THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH WEIL, Plaintiff in Error.

*Opinion filed December 16, 1909—Rehearing denied Feb. 2, 1910.*

1. CRIMINAL LAW—*a verdict of guilty on specified count is an acquittal as to others.* A verdict of guilty on the second count of an indictment containing two counts is equivalent to an acquittal on the first count, and no rulings of the court on such first count can be assigned for error in the Supreme Court.

2. SAME—*whether bill of particulars shall be furnished rests in discretion of court.* Whether or not the People shall be required to furnish a bill of particulars under a count charging the confidence game is a matter resting in the sound legal discretion of the court, and if such count is sufficiently specific to notify the defendant of the offense with which he is charged, a refusal to require a bill of particulars is not an abuse of such discretion.

3. SAME—*an election is not necessary if two offenses charged grow out of same transaction.* The right of a defendant to require the People to make an election is confined to cases where the offenses charged in different counts are actually distinct and do not arise out of the same transaction, and no election need be required if the offenses charged in the different counts arise out of the same transaction.

4. SAME—*court may allow a witness to testify whose name is not on indictment.* It is within the sound legal discretion of the court to allow a witness to testify whose name is not endorsed on the indictment, and such discretion will not be reviewed unless the defendant was taken by surprise, and the burden is on the defendant to show that fact.

5. SAME—*what is not an abuse of discretion in allowing witnesses to testify.* The fact that the notice given by the State's attorney to counsel for the defendant, in the defendant's presence, that certain witnesses whose names were not endorsed on the indictment would be called to testify, was an oral notice, does not render the court's action in allowing them to testify an abuse of its discretion.

6. EVIDENCE—*when the proof of other offenses is proper.* In a prosecution for the confidence game it is proper, for the purpose of showing guilty knowledge, to prove that the defendant has obtained the money of other persons by the same scheme by which he obtained money of the complaining witness.

7. APPEALS AND ERRORS—*alleged errors as to instructions not considered unless instructions are abstracted.* Unless the instruc-

tions in a criminal case are incorporated in the abstract of record the Supreme Court will not consider assignments of error upon the rulings of the court with reference to instructions.

8. SAME—*when a defendant cannot assign error on remarks of State's attorney.* A defendant cannot assign as error alleged improper remarks of the State's attorney in his argument to the jury unless he objected to such remarks and preserved an exception to the court's ruling or to its refusal to rule.

9. TRIAL—*what does not preserve alleged improper remarks for review.* The statement, "I object to the statements of the State's attorney," or words to that effect used by counsel for the defendant, without any ruling of the court or any exception to the failure of the court to rule upon the objection, does not preserve the statements of the State's attorney for review in Supreme Court.

10. CONFIDENCE GAME—*fact that dealings assume form of business transaction does not preclude conviction for confidence game.* The fact that the dealings under investigation in a confidence game prosecution assumed the form of a business transaction involving the making of a contract and its breach does not preclude conviction of the defaulting party if the transaction and contract were merely part of a scheme to secure the other party's confidence and obtain his money, without any intention of carrying out the contract.

11. SAME—*what constitutes the confidence game.* One who secures the confidence of another by falsely representing himself to be a friend of an acquaintance of the other party, falsely represents that he is employed by a local business concern and has lost his pocket book and obtains the other party's money, leaving an I. O. U. and a practically worthless watch as security and promising to return the money the next day, though he had, in fact, no intention of returning the money and never did return it, is guilty of the confidence game.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

At the March term, 1909, the grand jury of Cook county returned into the criminal court of Cook county against the plaintiff in error an indictment containing two counts. The first count charged the plaintiff in error with having obtained from Thomas E. Brabenec the sum of $30 by false pretenses, in violation of section 96 of the Crimi-

nal Code; and the second count charged plaintiff in error with obtaining a like amount from said Thomas E. Brabenec by means of the confidence game, in violation of section 98 of the Criminal Code. After a motion to quash the indictment, and each count thereof, had been overruled a plea of not guilty was entered, and upon a trial a verdict was returned finding the plaintiff in error guilty under the second count of the indictment, and upon which verdict, after overruling a motion for a new trial, the court sentenced the plaintiff in error to the penitentiary, and he has sued out this writ of error to review said judgment of conviction.

The undisputed evidence shows that Thomas E. Brabenec was in the employ of the Clinton Wire Cloth Company as cashier, whose place of business was at No. 30 River street, in the city of Chicago; that at about six o'clock on the evening of December 5, 1907, the plaintiff in error went to the business place of said Clinton Wire Cloth Company in company with a man whose name he said was Moore; that the business place of the Clinton Wire Cloth Company was closed for the day and Thomas E. Brabenec was in the office alone; that the plaintiff in error knocked on the office door; that Brabenec went to the door, where he found the plaintiff in error, who was a well-dressed man and presented a favorable appearance, and admitted the plaintiff in error and Moore to his office, whereupon the plaintiff in error said to Brabenec his name was Watson, and he inquired for Mr. E. F. Schmidt, the former cashier of the Clinton Wire Cloth Company, who, he said, was his friend; that on being informed by Brabenec that Mr. Schmidt had severed his connection with the Clinton Wire Cloth Company and was not in its employ, plaintiff in error said he was in the employ of the American Wire Fence Company, of the city of Chicago, and that while he was crossing the Rush street bridge he had just lost his pocket book; that after some conversation between

the parties the plaintiff in error asked Brabenec if he could not let him have some money,—a few dollars. Brabenec asked him how much he wanted, and he said about $10. Brabenec went to the safe, where he had $35 which he had drawn as wages, took out the package containing the money and took a ten-dollar bill from the package and laid it on the counter. The plaintiff in error thereupon picked up a card and wrote an I. O. U. thereon for $10 and signed it "J. R. W., 184 LaSalle St.," and said he would send the money over by the office boy the next morn-. ing. As Brabenec laid out the $10 the plaintiff in error said, "Can you let me have $20?" and changed the I. O. U. to $20, and when Brabenec laid out $20 he said, "Make it $30," and changed the I. O. U. to $30, and took from his pocket a watch which he removed from his fob, and said, "I will leave this watch with you for security," and picked up the $30. Brabenec placed the watch and the I. O. U. and the balance of his money in the safe and the plaintiff in error left the office. The plaintiff in error did not send over the money, as he had agreed to, on the next morning, and it turned out on investigation that his name was not Watson, that he did not know Mr. Schmidt, that he was not in the employ of the American Wire Fence Company, that the watch which he gave Brabenec was worth at wholesale $1.60, and that the scheme he worked on Brabenec he had, a short time before he obtained Brabenec's money, worked on Frank T. Dicey, of whom he obtained $10.

STEDMAN, SOELKE & SHUTAN, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN E. W. WAYMAN, State's Attorney, and JOEL C. FITCH, (ROBERT E. CROWE, and FREDERICK BURNHAM, of counsel,) for the People.

Mr. Justice Hand delivered the opinion of the court:

The first contention of the plaintiff in error is that the court erred in overruling his motion to quash the indictment and each count thereof. The verdict of guilty on the second count was equivalent to a verdict of not guilty on the first count. (*People* v. *Whitson,* 74 Ill. 20; *Keedy* v. *People,* 84 id. 569; *Thomas* v. *People,* 113 id. 531.) By the verdict the first count was eliminated from the case, and error cannot be assigned upon any of the rulings of the court with reference to that count, and the second count was in the language of the statute and was a good count. (*Graham* v. *People,* 181 Ill. 477.) The court did not err, therefore, in overruling the motion to quash.

It is next urged that the court erred in overruling the motion of the plaintiff in error for a bill of particulars under the second count of the indictment. Whether or not the State's attorney should have been ruled to furnish the plaintiff in error a bill of particulars under the second count of the indictment was a matter which rested in the sound legal discretion of the trial court. The second count of the indictment was sufficiently specific to notify plaintiff in error of the criminal offense with which he was charged, and the court did not err in overruling his motion for a bill of particulars. *Morton* v. *People,* 47 Ill. 468; *DuBois* v. *People,* 200 id. 157; *Gallagher* v. *People,* 211 id. 158.

It is also contended that the court erred in declining to require the State's attorney, at the close of the People's case, to elect upon what count of the indictment he would ask for a conviction, and in permitting the State's attorney to call witnesses whose names were not upon the back of the indictment. If two or more offenses are properly joined in an indictment under separate counts and grow out of the same transaction the State's attorney will not be required to make an election for which offense charged in the indictment he will ask a conviction. The right to re-

quire the State's attorney to elect for which offense he will
ask the jury to convict, when more than one offense is
charged in different counts of an indictment, is confined
to cases where the offenses charged in the different counts
of the indictment are actually distinct from each other and
do not arise out of the same transaction. (*Goodhue* v.
*People,* 94 Ill. 37; *Andrews* v. *People,* 117 id. 195; *Her-
man* v. *People,* 131 id. 594.) And it is within the sound
legal discretion of the court to allow a witness to be called
whose name is not endorsed on the back of the indictment,
(*Logg* v. *People,* 92 Ill. 598,) and the exercise of that dis-
cretion will not be reviewed by this court unless it appears
that the defendant has been taken by surprise, (*Gifford* v.
*People,* 148 Ill. 173,) and the burden is upon the defend-
ant to show that he was surprised. Here it appeared the
counsel for the plaintiff in error was notified orally before
the trial was commenced, in the presence of the plaintiff in
error, by the State's attorney, that the witnesses whose tes-
timony was objected to and whose names were not upon
the back of the indictment would be called and examined
as witnesses upon the trial. While the practice, generally,
is to give such notice in writing, we think it clear no sur-
prise was worked upon the plaintiff in error, and that the
court did not err in permitting certain witnesses to be
called by the State's attorney and to testify upon the trial
although their names did not appear upon the back of the
indictment.

It is further contended that the court erred in ruling
upon the admission and rejection of the evidence. The
most of the objections urged to the rulings of the court in
this particular are hypercritical and need not be considered,
and the specific objection that the court permitted proof
of other offenses cannot be sustained, as it was proper to
prove plaintiff in error had obtained the money of other
persons by the same confidence scheme by which he ob-
tained the money of Brabenec, for the purpose of showing

guilty knowledge. *DuBois* v. *People, supra; Juretich* v. *People,* 223 Ill. 484; *Lipsey* v. *People,* 227 id. 364; *People* v. *Hagenow,* 236 id. 514.

It is also said the court improperly instructed the jury on behalf of the People and refused to properly instruct the jury on behalf of the plaintiff in error. The instructions have not been abstracted, and the rule is well settled that this court will not review assignments of error upon the rulings of the court upon the instructions unless the instructions are incorporated in the abstract. *Pratt & Co.* v. *Paris Gas Light and Coke Co.* 155 Ill. 531; *City of Roodhouse* v. *Christian,* 158 id. 137; *Thompson* v. *People,* 192 id. 79.

The plaintiff in error further complains that the State's attorney in his argument made improper remarks to the jury. A party cannot assign as error in this court improper remarks by the State's attorney in his remarks to the jury unless he objects to such remarks at the time they are made, and preserves an exception to the ruling of the court upon such objections or upon the refusal of the court to rule thereon. (*Lipsey* v. *People, supra; McCann* v. *People,* 226 Ill. 562.) The statement by counsel for the defendant during the argument of the State's attorney, "I except to the statements of the State's attorney," or words to that effect, without any ruling of the court or an exception to the failure of the court to rule upon the objection, does not preserve for review in this court an exception to the remarks of the State's attorney.

It is finally contended that the evidence does not support the verdict and that the verdict is contrary to law. It clearly appears that the plaintiff in error went to the place of business of Brabenec and represented to him that his name was Watson and that he was a friend of Mr. Schmidt, who was also a friend of Brabenec, which statement was false; that he also represented to Brabenec that he was in the employ of the American Wire Fence Company, which

statement was also false; that after having gained his con-
fidence by making those statements, he obtained from Bra-
benec $30 upon the representation that he had lost his
money and would return the same to him the following
morning, and left with Brabenec a worthless watch and
his I. O. U. for $30, which he never intended to pay. This
transaction, it is urged by the plaintiff in error, was a busi-
ness transaction, and the obtaining of the $30 amounted, in
law, to a loan of that sum from Brabenec to the plaintiff
in error and nothing more, and that, conceding all the facts
found in this record to be true, it does not show that the
plaintiff in error committed the criminal offense of obtain-
ing money by the confidence game from Brabenec. The
jury evidently did not accept the plaintiff in error's view
of the effect of the transaction between the plaintiff in er-
ror and Brabenec. Neither do we. It was held in *Chilson*
v. *People,* 224 Ill. 535, that the fact that the dealings be-
tween the parties assumed the form of a business transac-
tion and its breach involved the breach of a contract did
not relieve a defendant of criminality, where it appeared
the contract was entered into by a defendant with the inten-
tion of taking no steps to carry it out but with the wrong-
ful intent of causing the other party to part with his money
without receiving any adequate consideration therefor, and
that where it appeared, as it was held in that case it did
appear, that the contract was but a mere incident to the
false and fraudulent scheme of the defendant, the defend-
ant was liable for a violation of the statute defining the
offense of obtaining money or property by the confidence
game. In that case, on page 539, the court represented its
view of the law upon the question now under considera-
tion by an illustration founded upon the facts in an early
case in this court. It was there said: "The ordinary case
of agreeing to sell the gullible one a gold brick now in the
possession of the aged Indian presents a breach of a con-
tract, and yet counsel would scarcely pretend that it is for

that reason any the less a confidence game. The fact that the affair was made to assume the guise of an ordinary business transaction, whereby, as a preliminary, Spooner was required to pay his money for the lots, is without significance. It is the substance, and not the form, that is material. The transaction in question was 'a swindling operation, in which advantage was taken of the confidence reposed by the prosecuting witness in the plaintiff in error,'—a confidence that had been obtained by deceit and false promises. The case came within the confidence game statute." In *Maxwell* v. *People,* 158 Ill. 248, it was said (p. 256) : "It is difficult to give a definition of what is commonly called the confidence game;" and in *Morton* v. *People, supra* (p. 474) : "These devices are as various as the mind of man is suggestive." In the *Maxwell case* Webster's definition of the offense was adopted, and it was there held (p. 256) that the "confidence game is any swindling operation in which advantage is taken of the confidence .reposed by the victim in the swindler." And this court, in *Hughes* v. *People,* 223 Ill. 417, on page 421, said : "We think it clear, where a party has by a course of conduct led his victim to repose confidence in him with a view to take advantage of such confidence and to obtain the money or property of his victim by a betrayal of such confidence, and advantage is taken of the confidence reposed by the victim in the swindler, and the swindler obtains, by reason of the betrayal of such confidence, the money or property of his victim, the statute has been violated." In this case the evidence shows, without dispute, that Brabenec was swindled by the plaintiff in error out of his money by the betrayal of the confidence which the plaintiff in error's fine clothes and appearance, professed acquaintance and friendship with his friend and false promises had inspired in Brabenec. We are of the opinion this case falls clearly within the terms of the confidence game statute, as construed by this court in *Maxwell* v. *People,, supra, Du-*

*Bois* v. *People, supra, Hughes* v. *People, supra, Juretich* v. *People, supra, Chilson* v. *People, supra,* and *People* v. *Depew,* 237 Ill. 574.

The judgment of the criminal court will be affirmed.

*Judgment affirmed.*