People of State of Illinois, Defendant in Error, v. John
D. Regan (Impleaded), Plaintiff in Error.

Gen. No. 46,089.

Opinion filed October 7, 1953. Released for publication December 14, 1953.

FRANK A. McDONNELL, of Chicago, for plaintiff in error; WILLIAM L. CARLIN, and LOUIS A. ROSENTHAL, both of Chicago, of counsel.

JOHN GUTKNECHT, State's Attorney of Cook county, of Chicago, for defendants in error; JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and ARTHUR F. MANNING, Assistant State's Attorneys, all of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

John D. Regan, plaintiff in error, was indicted with Adolph Cohn and George Myers, charged with the crime of conspiracy. The indictment is based on the alleged conspiracy of plaintiff in error with others to defraud the State by presenting excessive claims for funeral and burial expenses of six recipients of old age

pensions. The pertinent provisions of the statute, Chapter 23, Article 5, 440—7, Illinois Revised Statutes, Illinois State Bar Edition 1949 [Jones Ill. Stats. Ann. 18.205-7], read:

"**440–7.** § 5–7. **Burial.**) Upon the death of a recipient, if the estate of the deceased is insufficient to pay his funeral and burial expenses and the children legally responsible for the support of the deceased are unable or cannot be compelled to pay the same, the county department, subject to the rules and regulations of the Commission, may pay not more than one hundred and fifty dollars ($150.00) either for the total cost of the funeral and burial, . . . "

In the year 1950, because of lack of funds, the allowance for burial and funeral expenses for old age pensioners was $120. The rules and regulations of the Public Aid Commission issued on February 10, 1950 provided that in the event the funeral director failed to furnish a casket, wooden burial box, a hearse, or to embalm the body of a deceased, certain deductions were to be made as follows: Casket, $50; embalming, $20; hearse and automobile, $30; wooden burial box, $15. The evidence shows that a custom and usage prevailed in the City of Chicago relating to funerals and burials of the recipients of old age pensions, that the funeral directors furnished cloth-covered wooden caskets with four handles, an outside wooden box to contain the casket, and that the body of the deceased be embalmed, dressed in underwear, socks, and a burial suit or shroud.

The uncontroverted evidence is that all of the bodies of the pensioners here in question were buried during the months of February, March and April, 1950, and later exhumed. June 16, 1950, shortly after the exhumation, each of the bodies was examined by the physician of the Coroner of Cook county. One of the bodies

was embalmed and clothed, another was wrapped in a blanket, and the others swathed in hospital sheets. Five of the bodies had not been embalmed. All of the bodies had been placed in rough unfinished pine boxes supplied by the County Morgue, in which they were buried in a cemetery.

Printed forms of the funeral director's statement, furnished by the Illinois Public Aid Commission, provided blank spaces for the name and address of the funeral director, the name of the decedent, where he died, the date of death, and the specific items furnished by the funeral director, such as the casket, outside box, embalming, hearse and transportation, clothing, burial lot and opening, and religious services. Each of the funeral director's statements for the funeral and burial expenses of the deceased pensioners here involved was signed by plaintiff in error and indicated that all of the foregoing items were furnished. The record discloses that the charge for the items furnished by the funeral director for funeral and burial expenses of four of the pensioners was $120 each and the remaining two $100 each. In each instance the claim of the funeral director was assigned to The Morticians Acceptance Company, a corporation engaged in the business of financing funerals. The Acceptance Company presented the assigned claims to the Illinois Public Aid Commission, which honored them. These claims were later paid in full out of State funds.

The indictment consists of two counts. The first count alleged that plaintiff in error Regan, Cohn, and Myers conspired with each other and other persons whose names are "all unknown," to cheat and defraud the State of Illinois of money, personal goods, and property. The second count alleged that they conspired to obtain by false pretenses the counter-signature of the acting Treasurer of the State to certain auditor's warrants for the payment of money. Cohn was granted

a severance. Trial by the court without a jury resulted in a finding of not guilty as to Myers. Plaintiff in error Regan was found guilty, sentenced to the penitentiary, and fined. Cohn having been granted a severance was later tried and found not guilty. After Cohn was acquitted, plaintiff in error filed a petition praying that the judgment and conviction against him be vacated, or, in the alternative, a new trial be granted him, on the ground that the acquittal of Cohn and Myers left plaintiff in error as a lone conspirator in the case, and that none of the unknown persons alleged in the indictment was identified or named at the trial of this case.

The common-law record shows that plaintiff in error was found guilty under count 1. The transcript of the proceedings shows that the trial judge found plaintiff in error guilty under the second count.

Plaintiff in error contends that there was a fatal variance between the judgment of the court as shown in the transcript of the proceedings and the judgment according to the common-law record. The record shows that the State's Attorney filed a supplemental record consisting of a motion to correct the transcript of the proceedings, and an affidavit of the official court reporter in support of the motion certifying that the true and correct transcript of the proceedings read, "As to Count 2, I· find the defendant John D. Regan not guilty." "As to Count 1, I find the defendant John D. Regan guilty as charged in the indictment . . . ." The trial judge entered a nunc pro tunc order based solely on the affidavit of the court reporter, for the purpose of correcting the transcript of the proceedings.

 The law is well settled that amendments to the record should not be allowed after the close of the term of court at which the judgment was entered unless there were some memoranda, minutes, or note of the judge, or something appearing on the record or in the

files to amend by. (*People v. Anthony,* 129 Ill. 218.) An amendment to a bill of exceptions after term cannot be made when based only on the judge's recollection or on *ex parte* affidavits or testimony. (*Quigley v. Quigley,* 268 Ill. App. 130.) To the same effect see *Gould v. Gould,* 340 Ill. App. 638. Under the authorities last cited we shall disregard the supplemental record. The verdict of guilty on the first count was equivalent to a verdict of not guilty on the second count. (*People v. Weil,* 243 Ill. 208.)

■■ In order to sustain a conviction for a conspiracy there must be more than one person shown to be guilty. (*People v. Bryant,* 409 Ill. 467; *People v. LaBow,* 282 Ill. 227.)

The State insists that one person may be found guilty under an indictment charging him with having conspired with persons "unknown to the grand jury." In support of its position it relies on *People v. Estep,* 346 Ill. App. 132, and the recent case of *People v. Martin,* 350 Ill. App. 196, 112 N. E. (2d) 526.

The evidence shows that Myers, who operated his own truck, transported the bodies of all the pensioners from the Morgue; that when he called at the Morgue he drove his truck up to the platform and a morgue attendant placed each of the bodies in the truck. At the time Myers received the bodies he had no conversation with the morgue attendant nor did he have a requisition of any kind, oral or written. There was also evidence that an unidentified person telephoned the Myers home to call for the bodies at the Morgue. There is no evidence tending to identify the person who delivered the bodies to Myers at the Morgue or made the telephone call to the Myers home to call for the bodies.

■■■ From a reading of the statute it is clear that the legislature intended to provide every recipient of

old age pension a funeral and burial in keeping with the dignity of a human being. We think the evidence is sufficient to warrant a finding that plaintiff in error was engaged in a nefarious scheme to frustrate the legislative intention but proof of the essential elements of a conspiracy is lacking. We are of the opinion that the evidence is not sufficient to support a finding that plaintiff in error conspired with "unknown" persons as charged in the indictment. It may well be that the prosecution might produce additional or more satisfactory evidence of the "unknown" persons on another trial. See *People v. Martin*, 380 Ill. 328.

The judgment is therefore reversed and the cause remanded for a new trial.

*Reversed and remanded for new trial.*

FEINBERG, P. J. and KILEY, J., concur.