Paul Lawrence BATTESE, Appellant,

v.

STATE of Alaska, Appellee.

No. 715.

Supreme Court of Alaska.

April 3, 1967.

M. Ashley Dickerson, Anchorage, for appellant.

Warren C. Colver, Atty. Gen., Juneau, Thomas E. Curran, Jr., Dist. Atty., Anchorage, for appellee.

## OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

A jury found appellant guilty of the crimes of burglary and attempted larceny. This appeal followed.

■■ The indictment showed that only one witness, Officer Paul Barnhardt, was examined before the grand jury.[1] In his opening statement to the trial jury the prosecuting attorney stated that five witnesses in addition to Barnhardt would be called to testify for the state. Appellant then moved for a mistrial, or in the alternative for the exclusion of the five additional witnesses, on the ground that the state had named witnesses to be called who were not included in the indictment and that this resulted in appellant not being afforded an adequate opportunity to avoid surprise and prepare his defense. The motion was denied and all of the state's intended witnesses were allowed to testify. Appellant contends that the refusal of the trial court to grant a mistrial was reversible error.

Criminal Rule 7(c) requires that the names of all witnesses examined before the grand jury be endorsed on the indictment.[2] There is no rule and no statute that requires the state to furnish a defendant with the names of witnesses intended to be called at the trial who were not examined before the grand jury. In the absence of such a statute or court rule, the matter of excluding witnesses not known to the defendant until the time of trial or granting time to the defendant for investigation and preparation as to such witnesses is within the discretion of the trial judge.[3] We shall interfere with the exercise of that discretion only where it has been abused.

We find no abuse of discretion. Appellant did not request a continuance. Appellant does not show nor does the record reveal any prejudice resulting to appellant from his not having had time to investigate and prepare as to the state's witnesses who did not appear before the grand jury and whose names, therefore, were not endorsed on the indictment. Nor does our review of the record indicate that appellant was placed at any serious disadvantage in the cross-examination of such additional witnesses. In these circumstances we cannot say that the trial judge erred in failing to grant a mistrial or a continuance or in not excluding such witnesses from testifying.

■ Before the state presented any evidence it requested a jury view of the burglarized premises, the Anchorage Radio and Television shop. Appellant's counsel stated that "we * * * need a jury view ourselves and we approve of a jury view as such", but objected to the court allowing the jury to view the premises before any evidence was taken and before the state had established the corpus delicti. The state's request was granted, and appellant specifies this action of the court as his second specification of error.

The question of at what stage of a trial the jury should be permitted to view premises is a matter within the discretion of the trial court, and will be reviewed only for an abuse of discretion.[4] We find no such

1. Crim.R. 7(c) provides in part:
   When an indictment is found the names of all witnesses examined before the grand jury must be inserted at the foot of the indictment, or endorsed thereon, before it is presented to the court.

2. Ibid.

3. United States v. Aviles, 222 F. 474, 478 (S.D.Calif.1915); People v. Weil, 243 Ill. 208, 90 N.E. 731, 733–734 (1909); State v. Lovell, 97 Ariz. 269, 399 P.2d 674, 676–677 (Ariz.1965).

4. State v. Black, 193 Or. 295, 236 P.2d 326, 330 (1951); State v. Barnes, 150 Or. 375, 44 P.2d 1071, 1072 (1935); Whitley

abuse here. The trial judge stated it was his practice on an application for a jury view to allow the view before evidence is taken so that the jury may more readily understand the evidence. This makes sense. Evidence relating to burglarized premises would have more meaning to a jury if the premises were seen by the jury before the evidence was taken, rather than afterwards.

Appellant also contends that it was error to allow the jury to view the premises because there had been material changes since the burglary took place on account of repairs made to a hole in the ceiling of the shop. A jury view of premises may be allowed even if conditions have changed, if the character of the change is properly brought out in the evidence.[5] That was done here. Photographs taken before repairs were made which clearly show the hole in the ceiling were introduced in evidence. We find no error in the action of the trial court in allowing the jury to view the premises.

■ During the course of the trial three police officers testified for the state. In his third specification of error, appellant contends that the trial court erred in refusing to give to the jury appellant's requested Instruction No. 3 relating to the weight to be given to the testimony of police officers. The requested instruction read as follows:

> v. State, 114 Ark. 243, 169 S.W. 952, 956 (1914); Litton v. Commonwealth, 101 Va. 833, 44 S.E. 923, 927 (1903).
> Crim.R. 27(b) provides in part:
> When the court deems proper, it may order a proper officer to conduct the jury in a body to view the property which is the subject of the litigation or the place where a material fact occurred and to show such property or place to them.

5. State v. Black, 193 Or. 295, 236 P.2d 326, 330 (1951).

6. The trial court's Instruction No. 11, which embodies a correct statement of the law, provided in part as follows:
> In determining the credibility of witnesses and the weight to be given their testimony, you should decide what testimony is to be believed in the same way as you would decide whether to be-

In weighing the testimony of police officers greater care should be used than in weighing the testimony of ordinary witnesses because of the natural and unavoidable tendency of police officers to procure and remember with partially [sic], such evidence as would be against defendants:

There was no error in the court's refusal to give this instruction. Such an instruction suggests that police officers are not as likely to tell the truth as other witnesses. We see no reason to indulge in such a presumption. We agree with the trial judge's thought that the credibility of police officers should be judged by the jury by the same standards as are applicable to other witnesses.[6]

■ Appellant also contends that the court erred in refusing to give appellant's requested Instruction No. 13.[7] We perceive no error. The jury was adequately instructed on the elements of the crimes of attempted larceny, larceny and burglary, including the required intent to commit those crimes. Requested Instruction No. 13 was unnecessary.

■ In his fourth specification of error appellant asserts that the court erred by admitting into evidence some screwdrivers and scissors found in the premises of the Anchorage Radio and Television shop.

> lieve something told you out of court. You size up the witness in court in the same way as an informant out of court. Observe the appearance and demeanor of the witness. Reflect upon the opportunity he had to observe, or learn, or remember the facts to which he testified. Consider as well whether he has an interest in the outcome of the trial, or may have had a motive for testifying as he did. Weigh the probability or improbability of his testimony and whether he demonstrated a bias or prejudice against or inclination to favor either party, and the extent to which he is corroborated or contradicted by other testimony.

7. Appellant's requested Instruction No. 13 provided:
> If you find that the defendant went to the Anchorage Radio and TV to sleep

The evidence showed that a cash register drawer and a portion of the register above the drawer were nicked and gouged, and that two or three screwdrivers and a badly bent pair of scissors were found near the register. Appellant objected to the introduction of the screwdrivers and scissors on the ground that at that time no showing had been made of any connection between appellant and these objects. His objection was overruled.

The court was correct. The screwdrivers and scissors, considered in connection with their close proximity to the nicked and gouged cash register, were relevant evidence because a jury could find that they tended to establish a material proposition,[8] *i. e.,* that an attempt had been made to open the cash register drawer, which was the basis for the charge of the crime of attempted larceny. Those objects were relevant apart from any showing of a connection between them and appellant, although such a showing became an essential element of the state's case in order to establish that it was the appellant and not some other person who had committed the crime.

For the same reason it was permissible to allow testimony concerning the existence of a footprint in dust residue beneath a hole in the ceiling of the premises, even though it was not shown by comparative measurements or scientific tests that this was the footprint of appellant. The existence of the footprint beneath the hole in the ceiling tended to establish that a person had entered the premises through the hole, which was a material fact in attempting to prove that some unauthorized person had been in the premises where the attempted larceny took place. Whether or not such person was the appellant was to be determined by the jury from other evidence, such as appellant's admission that he had entered the shop by accidentally falling through the ceiling.

Appellant's fifth point is that the court erred in denying appellant's motion for a judgment of acquittal and for a judgment notwithstanding the verdict. We disagree. Viewing the evidence in a light most favorable to the state, we believe that fair minded men in the exercise of reasonable judgment could have differed on the question of whether guilt had been established beyond a reasonable doubt.[9] The case was properly submitted to the jury.

In his sixth specification of error appellant contends that the court erred by failing to maintain an unbiased attitude, by allowing the prosecuting attorney to misread appellant's written statement, and by making appellant incriminate himself.

We have examined the record and have discovered no bias on the part of the trial judge. He simply acted within his capacity to regulate the proceedings and advance the prosecution of the case without unnecessary delay.

As to the assertion that appellant's written statement was misread by the prosecuting attorney, that is true. Counsel, in reading appellant's statement, said: "After I got inside, I might have tried—decided to take something." The word "tried" was not in the statement. But it is evident that counsel corrected himself by substituting the proper word "decided". Appellant's counsel made no objection. We find no error.

In his written statement which the state introduced in evidence appellant said that he had entered the area above the ceiling of the Anchorage Radio and Television shop to get warm and sleep, and that in attempting to walk on boards across the ceiling he had fallen through the ceiling into the shop. During the trial appellant testified on his own behalf. On direct examination he testified that he crawled into the crawl space in the area over the shop and slipped and fell. On

and get warm, rather than with intent to commit larceny therein you must acquit him.

8. For evidence to be admissible it must be relevant, and to be relevant it must

tend to establish a material proposition. Mitchell v. Knight, 394 P.2d 892, 894 (Alaska 1964).

9. Bush v. State, 397 P.2d 616, 618 (Alaska 1964).

cross-examination he said that he was not on his hands and knees but in a stooped position. The prosecuting attorney then asked appellant to illustrate the stooped position. Over the objection of defense counsel, the prosecuting attorney was allowed to measure appellant's height to determine whether or not it was physically possible for him to have assumed ·the stooped position, in view of other testimony concerning the vertical dimension of the crawl space located above the shop. Appellant contends that being required to stoop, bend and submit to measurements violated his privilege against self-incrimination under the fifth amendment to the United States Constitution.[10]

Appellant's constitutional privilege against self-incrimination was not violated. "[T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material."[11] The privilege offers no protection against compulsion to submit to measurements or to assume a stance.[12]

 The minimum sentence for burglary not in a dwelling is two years imprisonment.[13] Appellant, an eighteen-year-old, was sentenced to a term of three years imprisonment. He contends that such a sentence, in excess of the minimum, was an abuse of discretion on· the part of the sentencing court.

In sentencing appellant the court required him to serve only 60 days in jail. The execution of the balance of the three year sentence was suspended and appellant was placed on probation for that period. Such an arrangement is not unduly oppressive or harsh—there was no abuse of discretion.

The judgment is affirmed.

---

10. The fifth amendment to the United States Constitution provides in part that no person "shall be compelled in any criminal case to be a witness against himself."

11. Holt v. United States, 218 U.S. 245, 252–253, 31 S.Ct. 2, 54 L.Ed. 1021, 1030 (1910).
Crim.R. 26(b) (3) provides:
An accused in a criminal action has no privilege to refuse, when ordered by the court, to submit his body to examination or to do any act in the presence of the court or the trier of the fact, except to refuse to testify.

12. See Schmerber v. State of California, 384 U.S. 757, 763, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908, 916 (1966). 8 Wigmore, Evidence § 2265, at 397, § 227(2) (McNaughton rev. 1961); McCormick, Evidence § 131, at 275 (1954).

13. AS 11.20.100 provides as follows:
A person who breaks and enters a building within the curtilage of a dwelling house but not forming a part of it, or who breaks and enters a building or part of it, or a booth, tent, railway car, vessel, boat, or other structure or erection in which property is kept, with intent to steal or to commit a felony in it, is guilty of burglary, and upon conviction is punishable by imprisonment in the penitentiary for not less than two nor more than five years.