Donna HAMPTON, Appellant,

v.

STATE of Alaska, Appellee.

No. 4711.

Supreme Court of Alaska.

Feb. 6, 1981.

Kenneth Goldman, Asst. Public Defender, Bethel, Brian Shortell, Public Defender, Anchorage, for appellant.

No appearance for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

PER CURIAM.

Donna Hampton was convicted by a district court jury in Bethel on one count of sale of liquor in violation of Bethel's local dry option, a state offense under AS 04.15.-110. Hampton was sentenced to 365 days with 180 suspended, and fined $2,500, with $1,500 suspended. Both her conviction and sentence were affirmed on appeal by the superior court. She has appealed again.

In late October, 1977, John Jackson came to Bethel from the village of Kwethluk to buy liquor. An acquaintance told him that he could buy it at a green house near Allen Turner's. On October 26, Jackson purchased a bottle of Seagram's 7 whiskey for $40 there. He could not see the seller because the transaction was carried out through a hole in the door of the house, but

he believed from the voice that the seller was a white woman. He drank that bottle and returned the following day, October 27, to purchase two more bottles, again from a person he did not observe. Jackson got drunk on those two bottles, was picked up by the police and agreed to buy a bottle for the police on the following day. When released from jail, still on the 27th, he returned to the green house and bought yet another bottle, again through a hole in the door so he could not observe the seller.

On October 28, the Bethel police arranged for Jackson to participate in a controlled buy. Jackson was searched to make sure he had no money on him, and was then given money by the police to buy liquor. He went back to the green house with the police, and once more bought a bottle of Seagram's 7 for $40. Jackson initially testified that the seller had not talked during the controlled buy, but on cross-examination said that she had. He could not say, though, that the voice was the same each time he heard it, and he never saw the face of the seller.

After Jackson returned to the police with his bottle, they executed the search warrant they had obtained. They announced themselves, and were admitted after a minute or two delay. The door was opened by Hampton, clad only in a shirt; a man, Daniel Sears, was also found, wearing nothing and in bed under the covers. The search turned up 74 bottles of whiskey, $820 in cash and two used airline tickets. The bills which the police gave to Jackson, however, were not recovered.

Hampton was charged with all four sales about which Jackson testified, but was convicted only of the last one. Concerning this transaction, the defense theory was that a woman other than Hampton had sold the liquor, and had escaped from the green house between the time the police knocked and the time Hampton let them in. To support this theory, Hampton presented testimony that at the time of trial the rear bedroom of the green house had a large trap door through which the seller could have escaped. However, Judge Cooke denied her motion to allow the jury to view the trap door, on two grounds. First, he found that there were indications that the door was recently installed, and had not been there on October 28. Second, he ruled that there was insufficient evidence of Hampton's "other woman" theory, and allowing the jurors to view the door might cause them to engage in unwarranted speculation.

Also in support of the "other woman" theory, Hampton's attorney cross-examined Bethel Police Chief John Winjum about the airline tickets found, which were in the names of Daniel Sears and Linda Wells. However, this effort was torpedoed by Winjum's testimony that Hampton had told him that the Linda Wells ticket had been purchased for her. Hampton's attorney immediately moved for a mistrial on the grounds that he had not been informed by the prosecution about this statement, as required by the rules governing criminal discovery. The motion was denied.

■ Hampton claims that the trial judge erred in denying her motion for a jury view of the trap door. However, the trial judge is vested with broad discretion in determining whether or not to grant a jury view. 23 C.J.S. Criminal Law § 986 (1961); cf. *Battese v. State*, 425 P.2d 606, 608 (Alaska 1967) (timing of jury view is committed to trial judge's discretion). We find that the district court here did not abuse its discretion in denying the motion.

Hampton also asserts error in the denial of her mistrial motion. This motion was based on an alleged violation of Alaska Rule of Criminal Procedure 16(b)(1)(ii), which reads, in relevant part:

> [T]he prosecuting attorney shall disclose the following information within his possession or control to defense counsel . . . :
>
> .    .    .    .    .
>
> (ii) Any written or recorded statements and summaries of statements and the substance of any oral statements made by the accused.

The prosecutor stated at trial that he, like Hampton, had no knowledge of Hampton's oral statement concerning the airline tick-

ets. The trial court in denying the motion stated, "The state's not responsible for what comes up on cross-examination."

We cannot agree with the trial court. The prosecution's failure to disclose the statement[1] caused Hampton's attorney to embark on what he believed to be a promising defense—that a person named Linda Wells had been present—and to be seriously set back by the revelation of her statement. Had he known of her statement, he probably would have left the whole question of airline tickets alone. The state argued below that Hampton's attorney could have asked for a continuance when it became known that Hampton had made *some* statement, so that he could ascertain the contents of that statement. But we cannot charge the defense with such a duty where it has no reason to suspect a damaging response, because of the state's failure to notify the defense of such a response under Criminal Rule 16(b)(1)(ii).

■ However, we do not believe a new trial is required by the state's failure to inform defense counsel of Hampton's unrecorded oral statement to Winjum regarding the airline tickets. The trial court has a broad range of discretion in determining when a mistrial should be granted. *Amidon v. State*, 565 P.2d 1248, 1261 (Alaska 1977). Here, we believe there was no abuse of discretion. While the statement apparently destroyed the "other woman" theory,[2] the theory was not reasonably credible in any event. There was only a very short time between the police announcement of their presence and their admission to the house, no one testified that anyone left the house during this time, and Chief Winjum stated that there was a mattress and box springs on top of the area where the trap door was later found, and that he heard no indication that furniture was being moved before he was admitted.

■ Hampton's final contention is that her sentence was excessive. We agree that the trial court erred in labeling her a worst offender; we defined the characteristics of a worst offender in *Wortham v. State*, 537 P.2d 1117, 1120 (Alaska 1975), and Hampton does not fit that category. But the question of whether or not a person. is a worst offender is material only when the maximum sentence has been imposed. *Id.* Here Hampton's unsuspended period of confinement was only half of the one year that could have been imposed under AS 04.15.-110, and her unsuspended fine was only one-fifth of the statutory maximum. Thus the mischaracterization of Hampton does not require resentencing.

■ We cannot conclude that the sentence was clearly mistaken.[3] Alcohol abuse is evidently regarded as a serious problem in Bethel, and the city has chosen to ban the sale of intoxicating liquor as a partial solution. Hampton conceded that "the deterrent effect [on others] is probably the most important sentencing consideration in this case," and the sentencing judge agreed. He also properly considered that Hampton was involved in a large-scale, professional operation; *i. e.*, that her offense was not just selling a single bottle to a friend.

AFFIRMED.

RABINOWITZ, C. J., concurs.

---

1. We are assuming, without deciding, that the prosecution had a duty of disclosure. Even though the prosecutor himself did not know of Hampton's statement, Alaska R.Crim.P. 16(b)(1)(ii) still applies if the statement was known to any persons "who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office." Alaska R.Crim.P. 16(b)(4)(ii).

2. In an attempt to resuscitate this theory, however, Hampton's attorney in closing argument vigorously attacked Chief Winjum's sudden recollection of Hampton's oral statement. In our opinion this attack was rather effective, *cf. Des Jardins v. State*, 551 P.2d 181, 187 (Alaska 1976) (intentional Rule 16 violation by prosecution not reversible error, as defense was able to proceed effectively without nondisclosed information).

3. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

RABINOWITZ, Chief Justice, concurring.

I concur in the result reached by the majority but disagree with the reasoning used to uphold the superior court's denial of Hampton's mistrial motion. The superior court based its ruling on the erroneous finding that no Rule 16(b) violation occurred; it did not exercise its "broad range of discretion in determining when a mistrial should be granted." I therefore think that application of the abuse of discretion standard here is inappropriate. Because I am convinced that the error was harmless in this context, however, I would affirm the superior court's denial of Hampton's mistrial motion on the basis of the harmless error standard.