(No. 23208.—

The People of the State of Illinois, Defendant in Error, *vs.* James W. Betson, Plaintiff in Error.

*Opinion filed February 14, 1936.*

GEORGE W. SPRENGER, for plaintiff in error.

OTTO KERNER, Attorney General, E. V. CHAMPION, State's Attorney, and A. B. DENNIS, (HENRY E. PRATT, ROY P. HULL, and BAIRD HELFRICH, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

James W. Betson, charged with kidnapping Dr. James W. Parker and holding him for ransom in 1932, was found guilty by a jury in the circuit court of Peoria county and

sentenced to the penitentiary for a term of twenty-five years. He seeks a reversal of the judgment by this writ of error.

The record shows that Dr. Parker was kidnapped from the drive of his home in Peoria about seven o'clock in the evening of March 14, 1932. He was seized by Claude Evans (alias Red Evans) and Arlo Stoops and driven in his own car to a point in Peoria where he was transferred to a Chevrolet car belonging to Stoops. In this car he was driven by another defendant, Cecil Minninger, who had followed the Parker car on a portion of its journey. On the transfer of Dr. Parker from one car to the other he was blindfolded, and in that condition he was taken to a farm near Manito. At this farm, which had been leased by Raymond Stoops, he was held and guarded alternately by Raymond and Arlo Stoops, Minninger, Evans, Homer Massey and Dwight Bartlett until the evening of April 1, when he was released near East Peoria, without any ransom being paid. While the doctor was held prisoner he was compelled by his captors to write letters to members of his family and friends seeking to raise the $50,000 demanded by the kidnappers.

About eleven o'clock P. M. on March 14, the wife of Dr. Parker received a telephone call at their home from a person identifying himself as "Double X." She was then informed her husband would not be home that night, was told where his car could be found and that she would hear from him the following morning. At the same time Edward W. Ohl, a house officer at the Pere Marquette Hotel in Peoria, saw the defendant Betson and Arlo Stoops together in the bottom lobby of the hotel. He saw Betson enter a telephone booth and use the telephone while Stoops waited for him in the immediate vicinity. On the morning of March 15, Betson called in person at an automobile service station located directly across the street from his home and claimed and drove away the Chevrolet automobile of Arlo Stoops which had been used in the kidnapping, after

paying the service attendant the sum of one dollar for washing the automobile. On the afternoon of March 31, Betson was taken into custody by police officers without any protest on his part and taken to a residence located in Peoria. There he was placed in a room with Joseph Pursifull, a Peoria attorney, who was likewise in custody for the kidnapping. The two were presumably alone in the room while Pursifull talked to Betson, during which he made many accusations implicating the latter in the kidnapping. All of the accusations were undenied by Betson at the time of their utterance. As a matter of fact, during this meeting the two were under the surveillance of police officers looking through a peep-hole and what was said was listened to by them through a dictaphone. While the two men were in the room, Henry E. Pratt, State's attorney of Peoria county, entered the room and accused Pursifull and Betson of connection with the kidnapping. This accusation was not denied by either man.

On the morning of April 1, while he remained in custody, Betson was taken to his home by a police officer. While the two were there, Nellie Minninger, the wife of Cecil Minninger, arrived about 7:30 and Betson, upon two occasions, told her to "go to 120 Fifth street (the home of Arlo Stoops) and tell the boys to dump it tonight— early." Mrs. Minninger then went to this place and failing to find Arlo Stoops, met Homer Massey in down-town Peoria, on the same day, and delivered Betson's message to him. Minninger, the two Stoops, Evans, Bartlett, Massey, Betson and Pursifull were all found guilty of the kidnapping, while three other defendants were found not guilty. All of the defendants were tried together and a number of confessions, which will be treated later, were introduced in evidence. The defendant's motions for a severance, new trial and in arrest of judgment were all denied.

The indictment consisted of five counts. The first was *nolle prossed* by the People. The second count is objected

to because it does not use the word "feloniously"; the third count is defective, according to the defendant, because it does use the word "feloniously" but charges in effect that Dr. Parker kidnapped himself; the fourth count is attacked because it does not charge a crime in the words of the statute, there being a failure to use the words "seize," "unlawfully" and also the word "feloniously"; and the fifth count is allegedly bad because words of the statute, *i. e.,*—"seize," "unlawfully" and "feloniously" were not used. Thus, according to defendant, there were no good counts in the indictment, and the trial court erred in overruling his motion to quash.

It is first argued by defendant that kidnapping for ransom was a felony under the common law, and that therefore it is necessary to charge that the kidnapping was done "feloniously." This contention is untenable for there is no such crime as a common law felony in Illinois. All felonies in this State are defined by, and required to be prosecuted under, our Criminal Code. Therefore, every indictment for a felony must be construed in accordance therewith. (*People* v. *Connors,* 301 Ill. 112; *People* v. *Corder,* 306 id. 264.) The second, fourth and fifth counts laid the charge in the exact words of the statute creating the crime. (Smith's Stat. 1931, chap. 38, pars. 386, 716.) The statute creating the crime for kidnapping for ransom is divisible into two parts. The fourth and fifth counts of the indictment were in the exact words of the second part, while the second count was laid in the exact words of the first part. The use of the word "feloniously" is not necessary in charging a felony under the Criminal Code. *People* v. *Connors, supra.*

The third count charged the crime of kidnapping for ransom under the first part of the statute, using the exact words thereof with the exception that the word "feloniously" preceded the words "wilfully" and "unlawfully." The allegation of defendant that this count charges Dr.

Parker with kidnapping himself is puerile. An examination of the count will show this is not the case if it is read with such proper punctuation as was included therein. After naming the defendants, the count charges that they on "the 14th day of March, in the year of our Lord, one thousand nine hundred and thirty-two, at and within the county aforesaid, one James Parker, feloniously, wilfully, unlawfully and forcibly seized and secretly confined," etc. The questioned counts of the indictment were legally sufficient and plainly conveyed to defendant notice of the nature of the offense, the persons charged therewith and the person kidnapped. This is all the law requires. *People* v. *Wood,* 318 Ill. 388.

The defendant assigns twenty-seven errors but we shall direct our attention only to those briefed and .argued in this court. In considering the allegations that the trial court erred in not granting the motion for a severance, in order that defendant could have a separate trial, we find that the motion and affidavit did not disclose that his defense was to be antagonistic to that of his co-defendants. It did not show any substantial reason why a severance should be granted, other than his desire not to be tried with his co-defendants. He believed such co-prosecution to be prejudicial to him, but gave no grounds therefor, except by intimating that statements or confessions of other co-defendants might be used prejudically against him. The record is conclusive that there was no antagonistic defense for the reason that no affirmative defense was offered by any of the other defendants. Betson concedes it would be the general rule of law that all defendants who are jointly indicted should be tried jointly, and that the matter of granting a separate trial to a co-defendant rests within the sound discretion of the court and may not be assigned as error, in the absence of abuse of such discretion. A trial court will pass upon a motion for a separate trial only upon the grounds advanced in its support at the time the motion

is made. This court, unless the facts were not then known, will not reverse a judgment and order a separate trial unless all the reasons therefor were presented to the consideration of the trial court. (*People* v. *Nusbaum,* 326 Ill. 518.) The right to a severance must rest upon the ground that the defense to be offered by one defendant is so antagonistic to the defense to be offered by the remainder of the defendants that severance is necessary to insure a fair trial. (*People* v. *Lawson,* 331 Ill. 380; *People* v. *Fisher,* 340 id. 216; *People* v. *Payne,* 359 id. 246.) The motion and affidavit presented to the trial court were insufficient in law, and there was no abuse of discretion in refusing the severance.

After the motion for a separate trial had been overruled, the trial court had to consider the use of certain confessions and statements by the People. A hearing was held upon the matter out of the presence of the jury. The State's attorney told the court that any reference in the confessions or statements they might offer, which mentioned another defendant's name, would be eliminated. This offer was not restricted but it encompassed evidence of any kind to be offered by the People. He said the People would stand on the confession of each defendant as pertaining to him alone; that he would see that all reference to any other defendant or defendants, in those confessions and statements, would be eliminated, except in cases where other defendants were present when those confessions or statements were made. In view of the statement of the State's attorney, the court properly overruled the motion of Betson that the confessions be kept from the jury.

The assigned error as to the admission of confessions centers about the confession of Arlo Stoops. The confession of this man connected Betson with the kidnapping by mentioning his name specifically as one of the conspirators and perpetrators of the kidnapping. The name of Betson was deleted from the confession wherever it appeared

therein and the words "another person" or "other persons" were substituted. The alleged objectionable portion of the confession concerned the return of Stoops to Peoria. It recited: "When we got back to Peoria the 'other person' mailed a letter to Dr. Parker's wife. The 'other person' called up Mrs. Parker and told her Dr. Parker would not be home. That call being made from the Pere Marquette Hotel on the ground floor at the pay-station." Betson argues that despite the deletion of his name, the confession definitely implicates him in view of the testimony of Edward Ohl that Betson used the telephone at the particular time and place in the Pere Marquette Hotel when he was in the company of the confessor, Arlo Stoops. In support of this point, Betson seeks to apply the holding of this court in *People* v. *Durand*, 321 Ill. 526, where the only assignment of error was on the admission of the confession of one Miller. The court limited the effect of the Miller confession and instructed the jury that they should not consider the confession in determining the question of the guilt of Durand; the name of Durand was stricken from the confession but certain statements were left which identified Durand as the party to whom Miller was referring. Betson cannot avail himself of the holding in that case because what was left in the Stoops confession, after deletion, did not connect Betson with the kidnapping. What did connect him with the kidnapping was the fact, as established by other than confessional evidence, that he was in the company of Arlo Stoops at the time and place in the Pere Marquette Hotel lobby at the location and time established. This is a testimonial coincidence very damaging to Betson and does not arise out of any improper or insufficient deletion of the confession of Arlo Stoops.

Complaint is made of the refusal of the trial court to hear evidence as to the competency of the statement made by the co-defendant, Pursifull, to Betson, during the time they were presumably alone in the room. In considering

this question we must keep in mind the fact that there was no direct denial of the testimony of the witnesses for the People as to just what occurred and what was said in the room in question. The defendant did not take the stand and testify in his own behalf. He would have this court infer that his physical condition was such, at the time he was in the room and confronted with Pursifull, that he could not make a denial of complicity to the accusations of his co-defendant. The inference he seeks is, that his weakened physical condition was entirely due to a brutal physical beating of him by police officers, and that while he was in a dazed condition, and not in command of all his mental and physical faculties, he was made the victim of a situation especially brought about by the officials for his entrapment. Betson cited *People* v. *Frugoli,* 334 Ill. 324, to the trial court as a reason for having a hearing out of the presence of the jury as to the competency of this evidence. In the cited case, this court held that under section 161 of the Criminal Code officers have no right to arrest men supposedly guilty of or charged with crime, confine and deprive them of their lawful rights to bail and counsel and of a speedy hearing, by hiding and moving them from one place to another for the unlawful and criminal purpose of extorting a confession. The trial court properly looked upon the accusations or recitals made by Pursifull in the presence of Betson, and his failure to make a denial thereof, as not constituting a confession, and properly held the ruling in the *Frugoli case* inapplicable. The testimony of witnesses who were present in the dwelling house and saw Pursifull and Betson in the room during the time the two were presumably alone, and immediately thereafter when others were in the room, establishes the fact that Betson was then in the complete command of his physical and mental faculties. In *People* v. *Kircher,* 309 Ill. 500, this court held that a mere acknowledgment of fact which only tends to establish guilt will not constitute a

confession; that an incriminating admission may be made without intention to confess guilt and that, under such circumstances, a defendant will not be entitled to a preliminary examination on the question of competency of the statements.

The statement of the co-defendant Pursifull made to Betson when they were supposedly in the room alone is, according to the latter, a hearsay statement and therefore inadmissible. He argues that it is only a case where one co-defendant tells another co-defendant what he said to a police officer at another time and at another place. This attitude is undoubtedly taken because of Betson's false premise that what Pursifull said, while Betson remained silent, constituted a confession. The statement is not hearsay for it is but a statement of Pursifull, a co-conspirator, concerning what he said to another respecting Betson's implication in the crime, and Pursifull was under no obligation, duty, force, duress or promise of reward to say anything. The evidence conclusively establishes the fact that Pursifull requested the meeting with Betson. It was natural for Pursifull to desire and request this opportunity to confer with Betson for their common interest due to the mutuality of their trouble, rather than to find out how innocent Betson was, although the latter was the reason given for requesting the opportunity. The State's attorney entered the room while the two men were conversing and accused Pursifull of trying to double-cross him and assured him that he was unsuccessful, as they had been watched and the statements taken down. The State's attorney then accused Pursifull and Betson of being the two men who constituted "Double X," and neither denied the accusation.

When the confessions of the co-defendants were read to the jury, the trial court orally instructed them not to consider the confessions as against any defendant who was not present when the confessions were made. Betson claims this ruling was very prejudicial to him, since the statement

of Pursifull was allowed to go to the jury. What we have said heretofore respecting the Pursifull statement controls this point for it was not a confession and it was not hearsay. *People* v. *Patris*, 360 Ill. 596.

It is charged the trial court unduly restricted the cross-examination by Betson of the People's witnesses, but the objection is chiefly centered about the examination of Mrs. Minninger. Inspection of that portion of the record containing her testimony shows that the trial court did not commit an abuse of its discretion. Betson's attorney was properly refused the opportunity of asking this witness as to Betson's appearance and physical condition, by way of cross-examination.

During the trial Dr. Parker was called to the stand as a People's witness and was instructed by the court, out of the presence of the jury, not to mention the names of any of the defendants other than that of Massey as to certain points about which he was about to testify. On his direct examination, however, the doctor related that Massey told him he had a conference with J. W. Betson. This was objected to as being highly prejudicial and the motion to strike was allowed. Betson charges that the witness deliberately and wilfully injected his name. The court immediately instructed the jury to disregard the statement and it was not repeated or enlarged upon. In view of all the circumstances, we do not believe this remark worked any serious harm to Betson. The remark bore upon a conversation but did not disclose what was said therein. Betson obtained all he asked for, *i. e.,*—that the remark be stricken. No reversible error was committed. *People* v. *Turner*, 260 Ill. 84; *People* v. *Davidson*, 298 id. 455.

As counsel for Betson was making his closing argument to the jury he directed a question to the State's attorney and the State's attorney replied that he would connect Betson with the kidnapping through Arlo Stoops' confession. No general or special objection was made to the

alleged prejudicial remark, no request was made of the court for a ruling nor was the court asked to act in any manner thereon. Betson cannot properly assign as error any improper remarks by the State's attorney in his closing argument unless he objected to such remarks at the time they were made and preserved an exception to the ruling of the court, or its refusal to rule, upon such objection. *People* v. *Weil,* 243 Ill. 208; *People* v. *Stephens,* 297 id. 91; *People* v. *Carson,* 341 id. 11; *People* v. *Wilson,* 342 id. 358.

Instruction number four given for the People is said to be erroneous and submitted to the jury the determination of the legal question as to what constituted the essential elements of the crime of kidnapping. This instruction merely told the jury the three elements necessary to the crime of kidnapping for ransom. It further informed the jury that any one having to do with the perpetration of all, or either, of the elements, is guilty of the crime of kidnapping for ransom; and, if the jury believed from the evidence in the case, beyond a reasonable doubt, that the defendants, or any of them, took part or participated in all of the elements, or any one or more of them, the jury would be justified in a finding of guilty. Betson did not set out the instruction objected to in his brief and we would be justified in ignoring the alleged error under authority of *People* v. *Connors, supra.* However, in the giving of this instruction no error was committed, as the trial court was only obeying the positive directions of this court as stated in *People* v. *Cramer,* 298 Ill. 509, wherein we said: "It is not proper for the court to submit to the jury the question of what facts are material, since the jury might regard some facts which had been proved as not material to the issue, and such an instruction ought not to be given without in some way definitely informing the jury what are the essential material facts constituting the crime with which the defendant is charged." We also said, in *People* v. *Pe-*

*titti,* 337 Ill. 625, that the crime of kidnapping for ransom is made up of the three elements enumerated in the questioned instruction.

Betson complains there is a lack of competent evidence to connect him with the crime charged in the indictment. He states there are only four things which in any manner might connect him with the kidnapping, viz.: (1) the confession of Arlo Stoops, (2) the statement of Pursifull, (3) the testimony of Mrs. Minninger, and (4) the improper statement of Dr. Parker coupling Betson with Massey. The record, however, is not so barren of incriminating evidence as Betson indicates. The first incident involving him in the crime happened within four hours after Dr. Parker was seized. This was when Betson telephoned from the lower lobby of the Pere Marquette Hotel to Mrs. Parker. This fact was proved by the testimony of witnesses Ohl and Mrs. Parker and was never contradicted. This occurred about eleven o'clock P. M., and the person telephoning identified himself as "Double X." Betson, when charged with being one of the two men who constituted "Double X," made no denial. The Parker car was found exactly at the place where this telephone informant told Mrs. Parker it would be found. Betson secured its possession and paid for the washing of Arlo Stoops' Chevrolet automobile at the filling station, just across the street from his home, the next morning. This was the car used in the kidnapping and it belonged to Arlo Stoops. When Betson was arrested he did not in any way protest or even ask the officers why they wanted him. On the evening of his arrest, he was brought into the presence of Pursifull at the request of the latter, who was one of the kidnappers. So far as these two then knew, they were left alone for about thirty minutes with full opportunity to discuss their predicament. When they thought they were alone in the room Pursifull looked at Betson, placed his fingers on his lips and then pointed to his heart, which was obviously a sig-

nal of silent understanding. During this meeting Pursifull made numerous accusations which involved Betson in the kidnapping and the latter did not deny any of them, although the evidence shows that he had full opportunity and was fully capable of doing so. Pursifull detailed to Betson, at this time, how a certain representative of the kidnappers was supposed to have appeared in Pursifull's office and demanded that he act as a go-between for them with the Parkers. Without dealing with Pursifull's statement, it will be sufficient to say that it inextricably involved Betson as a party in the crime and no denial was made by Betson, during this meeting, of his participation therein. While the two men were together in the room the State's attorney of Peoria county entered and in the presence of witnesses asked them concerning the whereabouts of Dr. Parker and each said "I don't know." This same officer, at this time, accused the two men of constituting "Double X" and neither of them denied the accusation. Nellie Minninger gave testimony which would lead any reasonable person to believe that when Betson directed her to go to 120 Fifth street and tell them to "dump it—early," he was ordering his confederates to release Dr. Parker. This view is borne out by the fact that the designated place was the residence of Arlo Stoops, a co-defendant. Not being able to find the desired parties at the place designated she met one of them in down-town Peoria and delivered the word, and Dr. Parker was released that evening. This is all circumstantial evidence, but circumstantial evidence is good evidence, and this court has repeatedly held that a conviction founded upon circumstantial evidence will be sustained, if other legal requirements have been met. *Carlton* v. *People,* 150 Ill. 181; *People* v. *Berger,* 284 id. 47; *People* v. *Buskievich,* 330 id. 532; *People* v. *Albers,* 360 id. 73.

The evidence produced by the People was more than sufficient to warrant the belief of the jury, beyond all reasonable doubt, that Betson was guilty of the crime charged.

516

The evidence not only shows him to be guilty but, in our judgment, shows conclusively and beyond all reasonable doubt, that he was the ring-leader of the kidnapping band.

The judgment of the circuit court of Peoria county is affirmed.