(No. 40119.—⬛)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
MARVIN DALE BERRY, Appellant.

*Opinion filed May 18, 1967.*

JOHN R. SPRAGUE, JOHN R. SPRAGUE, JR., and RONALD
A. NIEMANN, all of Belleville, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Defendant, Marvin Dale Berry, was tried by jury in the circuit court of Madison County, convicted of the crime of burglary, and sentenced to the penitentiary for a term of not less than five nor more than ten years. Jointly indicted and tried with him were two co-defendants, Clarence Barthelemy, who also was convicted but received probation, and Richard Hudson, who was acquitted. Defendant Berry has appealed, contending that he was denied his constitutional rights to a fair and impartial trial by reason of prejudicial pretrial publicity and the fact that he was denied a severance from his co-defendants.

The crime charged is a burglary that occurred in Edwardsville at approximately 5 :45 A.M. on August 27, 1959. A patrolman surprised three men in the process of breaking into a service station. As two of them fled he fired two shots but was unable to apprehend them. Defendant Hudson was found inside the building and on information furnished by him the other two defendants were arrested in Barthelemy's apartment a few hours later.

In the news coverage of the story on the day of the crime and the day after, Berry was referred to as a former convict, a notorious hold-up·man, a habitual criminal and a menace to society. Reference was made to the fact that he was presently out on bond pending his appeal of a previous robbery conviction and that a search of Barthelemy's apartment was made in an effort to recover guns taken in a recent burglary in which police believed Berry may have participated. Hudson's implication of his two co-defendants, their subsequent arrest, and details of the burglary were likewise reported. Short follow-up stories

were published after the arraignment of defendants, the revocation of Berry's appeal bond and commitment to the penitentiary on the previous robbery case, the appointment of counsel, a trial continuance, and Berry's petition for a change of venue. The last article complained of is a short editorial that appeared in an Alton paper on December 28 commenting on the petition for change of venue to the effect that perhaps the case would have to be taken to Chicago where "his kind would get lost in the myriads like him" and he wouldn't be singled out for newspaper attention.

Defendant contends that in view of this publicity he was entitled to a change of venue as a matter of right in that it must be presumed that such publicity gave rise to reasonable grounds for fear that the inhabitants of Madison County would be prejudiced against him and unable to give him a fair and impartial trial. We do not believe this to be a fair statement of the rule. Exposure of a crime and the background of an accused to publicity does not necessarily lead to the conclusion that all the inhabitants of a community must automatically be considered infected with prejudice toward the accused. To so state is to preclude the literate from jury service, and in turn, to put a premium on national notoriety as a means of avoiding trial anywhere. To the contrary, the rule is that an accused is entitled to a change of venue when it appears there are reasonable grounds to believe that the prejudice alleged actually exists and that by reason of the prejudice there is a reasonable apprehension that the accused cannot receive a fair and impartial trial. *People* v. *Meyers,* 381 Ill. 156; *People* v. *Witte,* 350 Ill. 558.

In applying this rule each case must be considered under its own facts. Obviously, this case is not in any way similar to the United State Supreme Court cases cited by defendant, (*Sheppard* v. *Maxwell,* 384 U.S. 333, 16 L. ed. 2d 600, 86 S. Ct. 1507, and *Irvin* v. *Dowd,* 366 U.S. 717, 6

L. ed. 2d 751, 81 S. Ct. 1639). In those cases "massive, pervasive and prejudicial publicity" saturated the community and carried over and through the trials. Aroused public passion and prejudice were clearly demonstrated and clearly evident. Here, the trial court was presented with a motion for a change of venue supported only by a number of newspaper clippings and an affidavit of the defendant that he did not believe he could receive a fair trial in the county. Unless one accepts the automatic-presumption theory of defendant the affidavit and clippings reveal nothing as to the temperament of the community. In fact, the bulk of the clippings are legitimate news stories of the crime, published the same day or the day following, and the motion was not filed nor the trial held until approximately four months later. That delay alone could be considered as a sufficient time lapse to dissipate any feeling of prejudice whether real or imagined, and in the absence of any contrary indication we cannot say that the trial court had any reasonable grounds whatsoever to believe that defendant could not get a fair and impartial trial in Madison County. *People* v. *Wilson,* 29 Ill.2d 82.

In retrospect it is pointed out that 102 jurors were discharged for cause and 57 on peremptory challenges and that this fact of itself is proof of the existence of prejudice. Though the *voir dire* examination was not preserved, this argument is refuted by the trial judge in his ruling on the post-trial motions. Being aware of defendant's concern he extended to him the widest possible latitude in excusing jurors for cause, and any juror who knew or had heard anything about the crime or any of the defendants was excused. This was done, as the court stated, not as a result of press coverage but in a sincere effort to assure defendant a jury completely free of even a suspicion of bias. We are convinced that he was successful in this effort and that defendant was afforded a fair and impartial trial by fair-

minded jurors unaffected by any outside influence. *People v. Hagel*, 32 Ill.2d 413.

Defendant next contends that the trial court committed reversible error in refusing to allow his motion for a separate trial. The motion set forth a written statement of defendant Hudson, admitting the crime, implicating his co-defendants, and stating further that Berry had forced him to take part in the burglary and that actually he was working for the FBI and had associated with Berry only for the purpose of keeping in touch with the hoodlum element. It was argued that the use of such statement for whatever purpose against defendant Hudson would be highly prejudicial and damaging to his co-defendants and, therefore, separate trials were imperative. The motion was denied upon the State's Attorney giving his assurance that the statement would not be used at the trial, and this was in compliance with the rule governing such situation. (*People v. Lindsay*, 412 Ill. 472.) But defendant now argues that even though the statement was not used Hudson did testify to the same facts as contained in the statement, and his defense was so antagonistic to Berry's that it became obvious that a severance should have been granted previously. This is a different argument than that presented to the trial court on the motion and we cannot hold it in error for failure to consider grounds not presented to it. *People v. Betson*, 362 Ill. 502.

In effect, defendant is now contending that he was denied a fair trial by the fact that Hudson testified for himself, and that such testimony was antagonistic to Berry in that it implicated him and attempted to exonerate Hudson. Berry did not testify, but Barthelemy testified, as did two other witnesses, that they and Berry were all in Barthelemy's apartment at the time of the crime and took no part in it. However, there is no indication that the State's Attorney had any knowledge of what Hudson's testimony

would be and there was no objection by defendant to Hudson testifying. Nor is there now any suggestion that Hudson would have repudiated or modified his testimony in any particular or would have refused to testify frankly and fairly whether or not a separate trial was given to defendant. Actually, Hudson's testimony was merely that of a witness, admissible whether in a joint or separate trial and no less reliable nor more damaging whether in one or the other. (See *State* v. *Hall,* 185 Wash. 685, 56 P.2d 715; *Wheeler* v. *United States,* 82 App. D.C. 363, 165 F.2d 225, *cert.* denied 333 U.S. 829, 92 L. Ed. 1115, 68 S. Ct. 448.) We therefore conclude that the trial court did not abuse its discretion in denying a separate trial on defendant's motion for a severance, nor was he denied a fair trial by reason of his co-defendant testifying.

Several other contentions are advanced by the defendant. He states that a pair of trousers and a shirt obtained from Barthelemy's apartment with the use of a search warrant should not have been admitted in evidence. We find that both items were adequately identified and connected with defendants so as to fairly assist in tending to prove the offense charged and, therefore, they were properly admitted. (*People* v. *Galloway,* 28 Ill.2d 355.) He claims he was not present at the time the court passed on his motion for a new trial, but the record states otherwise. In any event, a defendant's constitutional right to be present at his trial does not include a right to be present also at the argument on a post-trial motion. (*People* v. *Woods,* 27 Ill.2d 393.) Finally, he devotes a short argument to instructions, but having failed to abstract any of them this argument cannot be given consideration. *People* v. *Allen,* 17 Ill.2d 55.

The judgment of the circuit court of Madison County is affirmed.

*Judgment affirmed.*