(No. 40819.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* VINCENT GENDRON *et al.,* Appellants.

*Opinion filed Nov. 22, 1968.—Rehearing denied Jan. 28, 1969.*

THOMAS P. HOWE, of Clayton, Missouri, for appellant Vincent Gendron.

ROBERT L. LANSDEN, of Cairo, and NORMAN S. LONDON, of St. Louis, Missouri, for appellant Paul Baykowski.

WILLIAM G. CLARK, Attorney General, of Springfield, and PEYTON BERBLING, State's Attorney, of Cairo, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE WARD delivered the opinion of the court:

The defendants, Vincent Gendron and Paul Baykowski, were indicted and tried for murder before a jury in the circuit court of Alexander County. They were found guilty of voluntary manslaughter and each was sentenced to the penitentiary for a term of 10 to 15 years. A claim of a constitutional question of due process brings the matter here on direct appeal.

The record discloses that on the night of April 13, 1966, when the defendants were in the Hub Lounge in Cairo, Baykowski became involved in a violent scuffle with the proprietor, Charlie Thompson. When David Caughlin, another patron of the tavern, came to the aid of the injured Thompson, he was shot to death. Eyewitnesses testified that each of the defendants had fired at Caughlin, who was unarmed. The defendants fled but were apprehended in a car a short time later.

The defendants contend first that the trial court's denial of their motions for a change of place of trial deprived them of their constitutional right to a fair trial before an impartial jury. It is claimed the denial compelled their trial in a county where strong prejudice against them existed

as a consequence of certain pretrial publicity. They do not complain of publicity, if any, which attended the trial.

The publicity they refer to consists of 9 front-page newspaper articles which appeared in the Cairo Evening Citizen during a 5-week period following the commission of the crime. In their motion, which was filed on May 31, 1966, the defendants also made a general and undetailed complaint in regard to radio and television broadcasts during this period. The first news story questioned appeared the day after the crime, April 14. It reported a description of the crime, the apprehension of the defendants, and that they were charged with murder. Gendron was once referred to as a recently paroled ex-convict who had been serving a term for armed robbery. Also included was a statement that neither the sheriff nor city police would comment as to the connection, if any, the defendants had with local persons. A "mug shot" of Gendron taken at the State penitentiary accompanied the article. A brief story carried the next day stated that several guns had been seized at the time of the defendants' arrest and stated that the police had found a narcotics capsule and a cigarette possibly containing marijuana in rechecking the scene of arrest. Much contained in the other 7 stories challenged here was routine news material relating to the progress of the prosecution of the case through the arraignment. However, an article published on April 19 referred to the defendants as ex-convicts. Beneath the article were photographs of the defendants which had been taken in the local jail. Also, on April 29, the newspaper reported that Gendron had been transferred from the county jail to Menard penitentiary as a parole violator. An article on May 10 included a report of an attempted jail break by the defendants prior to their preliminary hearing. The last publication concerned appeared on May 9, 1966, about six months prior to the trial of the defendants. It stated that Gendron had complained in a court appearance, prior to his arraignment, of newspaper

references to his underworld connections, which connections, it was reported, he denied.

The defendants offered testimony of 8 residents of Alexander County in an effort to prove that they could not obtain a fair trial in that county. The State countered with 76 affidavits to support its motion to dismiss on the ground that a fair trial for the defendants could be had in Alexander County. The trial court denied the defendants' motion on September 27, 1966. Selection of the jury was commenced on November 15, 1966, and was concluded on November 21, 1966. The defendants renewed their motion several times when the jury was being selected, but each time it was denied.

Of 297 prospective jurors examined in the selection of the jury, the defendants note that 123 were excused for cause—prejudice which arose from publicity.

The record shows that on the *voir dire* examination, the trial court carefully questioned each prospective juror individually regarding the publicity. Additionally, counsel for each defendant, as well as the prosecutor, was permitted to examine each juror separately and at length. Of 14 jurors selected, including the alternates, 13 had read or heard of the case. However, each of them denied having formed any opinion of the guilt or innocence of the accused and each related that he or she would be a fair and impartial juror. Every juror stated that he or she would base the verdict only on the evidence and would follow the court's instructions as to the law.

"[T]he rule is that an accused is entitled to a change of venue when it appears there are reasonable grounds to believe that the prejudice alleged actually exists and that by reason of the prejudice there is reasonable apprehension that the accused cannot receive a fair and impartial trial. *People* v. *Meyers,* 381 Ill. 156; *People* v. *Witte,* 350 Ill. 558." (*People* v. *Berry,* 37 Ill.2d 329, 331.) However, the fact of potentially harmful publicity within a community

alone does not establish proof of community prejudice, as each case must be judged on its own facts. (See *People* v. *Berry*, 37 Ill.2d 329, 331; *Blumenfield* v. *United States* (8th cir.), 284 F.2d 46.) And knowledge of a case will not of itself disqualify for jury service.

*Irvin* v. *Dowd*, 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639, was a case in which the Supreme Court held that highly prejudicial publicity had so infected the community of trial that the defendant had been deprived of a fair trial. However, in that case the Supreme Court realistically commented: "It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Here, of course, the jurors denied having had any preconceived notions as to guilt or innocence.

Too, our observation in *People* v. *Kurtz*, 37 Ill.2d 103, at p. 108, is pertinent. "The examination of prospective jurors on *voir dire* is, in a typical instance of pretrial publicity, probably the most valuable means of ascertaining partiality or indifference among persons summoned as jurors."

The articles, in our opinion, were not so gross and inflammatory as to require a conclusion that jurors, despite avowals of impartiality, had been prejudiced against the defendants. There was an interval of six months between

the publicity complained of and the trial, which, considering the publications, can reasonably be regarded as having been sufficient to dissipate any unfavorable effect from it or to reduce it to unimportance. (*People* v. *Berry,* 37 Ill.2d 329, 332.) The examination of prospective jurors did not disclose the presence of any attitude of prejudice toward the defendants. It appears, too, that the defendants were satisfied that the selected jurors were properly indifferent, as no challenge for cause was made to the trial judge as to any of them. (See *Beck* v. *Washington,* 369 U.S. 541, at 557, 558, 8 L. Ed. 2d 98, at 112, 82 S. Ct. 955.) Considering the several factors discussed it cannot be reasonably contended that the trial court abused its discretion in denying the motion for a change of the place of trial. This conclusion is unaffected by the further argument of the defendants, to show community prejudice, that a certain brochure had been widely circulated before the trial in the community. It purported to reproduce what appeared to be a confession given to an offense entirely unrelated to the crime here, and its cover referred to "unsolved and unpunished—killings—bombings—arsons." The circular did not refer to the defendants or to any matter involved in this case and the defendants do not claim that any of the jurors selected read it or associated it with their case.

The defendants next argue that because their defenses were antagonistic the trial court erred in overruling their motions for severance. However, neither defendant testified nor offered any other evidence at trial, and neither defendant confessed to the crime nor implicated his codefendant in any way prior to trial. Both defendants were silent from arrest to conviction.

We observed in *People* v. *Wilson,* 29 Ill.2d 82, 91: "The general rule is that persons jointly indicted for the commission of a crime should be tried together and whether a separate trial should be granted is largely within the sound judicial discretion of the trial court. The paramount

inquiry is whether the defenses are of such an antagonistic nature that a severance is imperative to insure a fair trial. (*People* v. *Grilec*, 2 Ill.2d 538, 547.)" (Accord, *People* v. *Henderson*, 37 Ill.2d 489.) Here, each defendant's motion failed to show that he would be prejudiced by a joint trial. We deem that the claim of antagonism is gratuitous and that the trial court did not abuse its discretion in denying the motions.

The defendants, now argue this question of severance, declaring that each of them was impeded from testifying by a fear that his co-defendant would then take the stand and testify against him. It is also now asserted that the joint trial prevented each defendant from calling his co-defendant as a witness to aid the defendant's cause. These are new grounds which were not presented in the motions for severance made before the trial court. We will not hold that a trial court's refusal to sever was error if the grounds for severance were not presented for its consideration, unless the facts relied on were unknown at the time. (*People* v. *Berry*, 37 Ill.2d 329, 333; *People* v. *Betson*, 362 Ill. 502, 507-8; *People* v. *Nusbaum*, 326 Ill. 518, 522.) In any case, the arguments are without merit. It would be utter specualation for us to conclude that a defendant's not testifying was due to fear of accusatory testimony in retaliation by a co-defendant. The argument that had separate trials been granted here, each defendant would have been able to secure the testimony of his co-defendant is not persuasive. As the United States Court of Appeals for the First Circuit has said: "There is no reason to think that a co-defendant would be any more willing to waive his constitutional privilege against self-incrimination when called as a witness at a separate trial than he would be willing not to insist upon his privilege as a defendant not to take the stand." *Gorin* v. *United States* (1st cir. 1963), 313 F.2d 641, 645-6.

The trial court did not err, as the defendants argue, when it refused their request, made after the State rested

its case, to call the State's Attorney of Alexander County, the prosecutor, as a witness. While a prosecuting attorney is not incompetent to be a witness (*People* v. *Gerold,* 265 Ill. 448, 480), there is an understandable reluctance to permit an attorney to appear in the same cause as both an advocate and a witness. Considering a situation resembling the one here the United States Court of Appeals for the 8th Circuit in *Gajewski* v. *United States,* 321 F.2d 261, at 268, stated: "Generally, a trial court has wide discretion respecting examination of witnesses. [Citations.] More particularly, under appropriate circumstances, a court may refuse to even allow a witness to take the stand. [Citations.] Courts are especially reluctant, and rightfully so, to allow lawyers, including prosecuting attorneys, to be called as witnesses in trials in which they are advocates. [Citations.] Although, as the above authorities indicate, such judicial discretion is generally exercised to prevent testimony by an advocate in *favor* of the party whom he represents, a court may, without abusing its discretion, refuse to allow the *defense* to call as a witness the United States Attorney trying the case. *Fisher* v. *United States* (9th cir.), 231 F.2d 99, 104 (1956)." The prosecution did not offer the recovered guns or bullets in evidence nor present any expert witness in this area, though two months before trial it did furnish the guns and bullets relating to the case to the defendants for examination. The list of witnesses given by the People to the defendants at that time included the name of the ballistic expert, who it appears had examined the materials. At the time the appellants sought to call the State's Attorney as a witness, the expert and the Chief of Police, who had custody of the guns and bullets, were in court and the appellants knew of their presence. It does not appear that the defendants conferred with the expert then or prior to trial. The defendants sought to prove through the State's Attorney that the prosecution had withheld from the jury evidence in its pos-

session which would allegedly show that the three bullets which had entered the victim's body had been fired from only one gun and thus would demonstrate that only one of the defendants had shot the deceased. There was no suggestion that the prosecutor had any technical competence in ballistics and could be qualified as an expert. The testimony of the prosecuting attorney was not necessary for the presentation of a defense and the trial court's refusal to permit defendants to call him as a witness was not an abuse of discretion. (*Cf. Gajewski* v. *United States* (8th cir.) 321 F.2d 261; *People* v. *Nelson*, 89 Ill. App. 2d 84, 89, 90.) The argument that the defendants were surprised when the People rested its case and, because of this, were unprepared to proceed with evidence concerning the guns and bullets does not persuade. The prosecution did rest its case at the commencement of proceedings on November 23 and it had related at the close of proceedings on the preceding day that two witnesses for the prosecution would be presented the following morning. That the presentation of a case may be abbreviated by a decision not to offer further evidence is certainly not unusual. If it was believed by the defense that the State's Attorney was not calling the ballistic expert because his testimony would have been unfavorable to the prosecution, it could have immediately brought the expert, who was known by the appellants to be in the courtroom, to the stand. It did not do so. Nor did the defense seek any recess of the procedings to consider the offering of any such ballistic evidence. There is nothing in the record to suggest that it was believed that the trial court would not entertain such a request, but rather it shows that the trial court said to the defense attorneys when it refused to allow the State's Attorney to be called: "You are not barred from introducing any evidence that you may think may be material to their defense and the court would be very lenient in hearing it if you have any you want to offer."

The defendants argue too that the People failed to establish the *corpus delicti* in that there was not sufficient evidence to show that the body on which the post-mortem examination was conducted was that of the victim named in the indictment, David Caughlin. The coroner's physician testified that he had been advised by the coroner that the body which he examined was that of David Caughlin, to which the defendants objected on the ground that it was improper hearsay testimony.

It is of course essential that the prosecution establish the *corpus delicti*. The elements to be proved in the case of a criminal homicide are proof of death and proof of a criminal agency causing death. (*People* v. *Benson,* 19 Ill.2d 50, 58; *People* v. *Wilson,* 400 Ill. 461, 480.) Proof of the *corpus delicti* may be by circumstantial evidence. (See *People* v. *Hanson,* 359 Ill. 266; *People* v. *Sapp,* 282 Ill. 51.) Here, witnesses testified that they saw David Caughlin shot down at about 11:00 P.M. on April 13, 1966, in the Hub Lounge in Cairo. A little later, *i.e.,* at about 1:30 A.M., at St. Mary's Hospital in Cairo the coroner's physician testified he performed a post-mortem examination of the body of a man who had been shot and determined that in his opinion death had been caused by a gunshot wound or wounds. Later two eyewitnesses to the shooting of Caughlin viewed his remains in the funeral home. We believe that the *corpus delicti* was under the circumstances adequately proved.

The judgment of the circuit court of Alexander County is affirmed.

*Judgment affirmed.*