THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD KELLY, Defendant-Appellant.

First District (4th Division)    No. 80-892

Opinion filed March 25, 1982.

Julius L. Sherwin, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Joel A. Stein, and Frank Castiglione, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Richard Kelly, was charged with involuntary manslaughter (Ill. Rev. Stat. 1977, ch. 38, par. 9—3(a)) and aggravated battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(a)). After a jury trial, he was found guilty of involuntary manslaughter and not guilty of aggravated battery; he was sentenced to a term of 3 years in the Department of Corrections. Defendant appeals. The following issues are raised for review: (1) whether the People established a causal relationship between the condition found in the body of the decedent after an autopsy and the occurrence alleged in the information; (2) whether defendant was proved guilty beyond a reasonable doubt of manslaughter; (3) whether the trial court erred in sustaining the People's objection when defendant sought to obtain an opinion as to the cause of death from one of the treating physicians; and (4) whether the trial court erred in giving a jury instruction defining circumstantial evidence, when all of the evidence adduced at trial was direct evidence.

We reverse.

Testimony at trial established the following.

Henry Price, the son of the victim, John Price, testified for the People. On March 1, 1979, John Price, who was 78 years old, resided at the Northwestern Nursing Center in Evanston, Illinois. He was placed in the nursing center because he would wander away from home. In the son's opinion, his father's mental faculties may have been impaired but his father was in good physical condition.

Dorita Moss, a rehabilitation assistant at the nursing center, testified that around 11 a.m. on March 1, 1979, she was on the third floor of the nursing center when she heard loud noises coming from a utility room. She walked to the room and saw Price on the floor and defendant Kelly on top of him. Moss stood 5 feet away from defendant, facing his back. Price's hands were above his head and defendant was holding Price's hands. Defendant's left knee was on the floor and his right knee was up. Defendant said, "Are you ready for me to shave you now, Mr. Price?" Then defendant pushed his right knee into Price's abdomen. Defendant repeated the question but Price did not respond. When defendant again pushed his knee into the same area, Price said, "Yes, yes, I'm ready." Then defendant picked up Price, pushed him into a nearby chair and pulled the chair toward the utility room. Moss went downstairs. Later she told Christine Dodson, another nursing center employee, what she had ob-

served. Prior to March 1, 1979, Price was ambulatory and would talk with Moss. After the incident, Moss visited Price in his room and asked how he was feeling. Price did not respond.

On cross-examination, Moss stated that at a grand jury proceeding, she testified that the victim was in a prone position with both hands backward and that "prone" means "face downward." At the proceeding she later stated that Price was on his back. In the opinion of Moss, Price was a quiet but stubborn man.

Christine Dodson worked in social rehabilitation at the nursing center. On March 1, 1979, she was assigned to the third floor. At around 11 a.m., she was in the dining room when defendant came in to take Price to shave him. Price did not want to be shaved but defendant insisted he was going to shave Price. Defendant picked up Price and took him forcibly from the dining room. When Dodson left the dining room, she heard a commotion coming from the utility room. Defendant was attempting to put Price in a chair; Price was fighting. They both fell to the floor with defendant on top of Price. Defendant asked Price a number of times, "Are you going to shave?" Price said, "No." Then defendant kicked Price in the stomach twice. Dodson reported the incident to her supervisor. At a meeting shortly thereafter, defendant said, "With a bunch of crazy people like this around, you have to use force."

After the incident, Dodson saw Price. As she passed by, he asked, "Lady, will you tell me where the washroom is?" Dodson said, "Mr. Price, you know [where] the washroom is, one in your room and one down the hall." Price attempted to get up but fell back in the chair. Dodson took him to the nurse. On cross-examination, Dodson said that defendant kicked Price in the right abdomen with his knee.

The parties stipulated to the testimony of Philip L. Gillette, the funeral director who conducted services for Price. Gillette would have testified that Price was buried on March 9, 1979, and that his body was exhumed on April 10, 1979.

Dr. Michel Jurayj, a cardiovascular surgeon, was on duty at St. Joseph Hospital in Chicago on March 2, 1979. At about 9 or 9:30 p.m., he examined Price. One of Price's legs was colder than the other. Price was comatose and his abdomen was slightly distended. When the doctor touched the lower abdomen, he noticed that Price winced and he concluded that Price had some pain there. Price did not wince when Jurayj touched his upper abdomen. Dr. Jurayj testified that although the abdomen is outside his field of expertise, he had suspected an acute abdomen which would indicate either inflammation or that a blocked artery was gangrenous. Jurayj's first diagnosis was dehydration. There was no indication of external trauma in the abdomen.

The parties then stipulated that John Price on whom Dr. Robert Stein

performed an autopsy on April 12, 1979, was the same John Price identified in the information.

Dr. Akshay Mahadavia, a physician affiliated with St. Joseph Hospital, examined Price on March 4, 1979, and pronounced him dead. In his report, there was no reference to any contusions on the body of Price.

Michael Foley, an Evanston police officer, investigated the March 1 incident at the nursing center and requested an exhumation of the body of John Price. On April 10, 1979, Price's body was exhumed.

Robert J. Stein, chief medical examiner of Cook County, performed an autopsy upon the body of John Price on April 12, 1979. Dr. Stein testified that his examination revealed a dark blue area of subcutaneous hemorrhage over the right pectoralis muscle which is the area on the right side of the chest above the nipple. There was also a contusion on the left elbow. An internal examination of the body revealed an area of blunt trauma characterized by the presence of hemorrhage at the bottom of the right pleural cavity which contains the right lung. There was also hemorrhage below the pleural cavity in the upper abdominal region approximately 6 inches from the pelvic area. Stein explained that blunt trauma is an injury produced by an object which is not sharp. In Stein's opinion, the trauma could not have been caused by the embalming process. The absence of external injuries in the abdominal area indicated, according to Dr. Stein, either that the injured person may have been wearing clothes, that the trauma was of the pressure type, or that the trauma-causing instrument was covered by soft materials.

Dr. Stein found evidence of arteriosclerosis, a generalized degeneration of blood vessels in the heart and aorta and evidence of thrombosis or bloodclotting in the abdominal portion of the aorta, but he found no abnormality in the mesentery vessels and no septicemia which is bacterial infection of the blood stream. In Stein's opinion, Price's death was caused by blunt trauma of the chest and abdomen in association with generalized arteriosclerosis. On cross-examination, Dr. Stein stated that arteriosclerosis was a pre-existing condition with no relationship to trauma.

Saloman Dayan, a staff physician at the nursing center, testified for the defense. He signed the death certificate for John Price. On the certificate, he listed the cause of death as cardiorespiratory arrest which is cessation of heart and lung functions. Septicemia was listed as a secondary cause of death, and mesentery thrombosis or clotting of the mesentery vessels was the third cause. Dayan did not know that defendant was alleged to have pushed his knee into the victim's abdomen.

Defendant Kelly testified in his own defense. At the time of trial, he was 39 years old. In March 1979, defendant was employed at Northwestern Nursing Center as an orderly assigned to the third floor where the psychiatric patients resided. On March 1, 1979, he was assigned the duty

of bathing, shaving and dressing John Price. After bathing and dressing Price, defendant escorted him to the dining room for lunch. At 11 or 11:30 that morning, defendant talked with Price about shaving, but Price did not want to be shaved. Defendant took Price to the utility room, sat him down in a chair and shaved him. As he began to put aftershave lotion on Price's face, Price jerked back and kicked the chair. Price said that defendant was trying to hurt him. Price kicked defendant in the stomach and kicked the chair. Defendant attempted to grab Price's legs, to stop the kicking, and also grabbed the chair which turned over. As a result, defendant fell on top of Price. Defendant admitted that he pinned the victim's arms over his shoulders. He stated that he was trying to pull Price up because it was the only way he could lift him. He denied pushing his knee into Price. After the incident, defendant helped Price to his feet. The entire incident, from the time defendant began shaving Price until he helped Price to his feet, lasted about 10 minutes.

Defendant had bathed Price on four previous occasions. He and another orderly would hold Price, pick him up and put him in the tub. After the incident, defendant took Price to his room and asked whether he was all right; Price said, "Yes." Defendant then reported the incident to Mrs. Ramiris, the head nurse on the third floor. Defendant was fired that day by the director of the nursing home.

The defense rested after defendant's testimony. A jury found defendant guilty of involuntary manslaughter and not guilty of aggravated battery. Defendant was sentenced to 3 years in the Department of Corrections.

Defendant contends the State did not establish that the March 1 incident in which defendant is alleged to have pushed his knee into the victim's abdomen caused the death of the victim. We agree. It is essential that the prosecution establish the *corpus delicti*. In a criminal homicide, the elements to be proved are proof of death and proof of a criminal agency causing death. (*People v. Gendron* (1968), 41 Ill. 2d 351, 360, 243 N.E.2d 208, 214.) Each element must be proved by competent evidence beyond a reasonable doubt. *People v. Jones* (1961), 22 Ill. 2d 592, 596, 177 N.E.2d 112, 114.

The medical examiner testified for the prosecution and stated that blunt trauma of the chest and abdomen in association with generalized arteriosclerosis caused the death of John Price. The victim's arteriosclerosis was a pre-existing condition unrelated to trauma. Although there was evidence presented which would support an inference that defendant may have caused the abdominal trauma, no evidence was introduced as to the cause of the trauma in the chest. Testimony by three other physician witnesses did not establish that the criminal agency of the defendant caused the victim's death. Dr. Jurayj's first diagnosis was dehydration. Dr.

Mahadavia found no contusions on the victim's body. Dr. Dayan, the physician who signed the death certificate, gave as the causes of death: cardiorespiratory arrest, septicemia, and mesentery thrombosis.

We hold, therefore, that the prosecution did not prove beyond a reasonable doubt that defendant's alleged criminal agency caused the victim's death. Because of our decision, it is unnecessary to address the other issues raised by defendant.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

JIGANTI and LINN, JJ., concur.