(No. 23529.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH RAPPAPORT, Plaintiff in Error.

*Opinion filed June 17, 1936—Rehearing denied October 16, 1936.*

CLARENCE DARROW, WILLIAM W. SMITH, WILLIAM L. CARLIN, and EDWARD M. KEATING, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, RICHARD H. DEVINE, MELVIN REMBE, E. I. HARRINGTON, and JOHN S. BOYLE, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

Joseph Rappaport, thirty years of age, was convicted by a jury in the criminal court of Cook county of the murder of Max Dent, and his punishment fixed at death. Motions for a new trial and in arrest of judgment were overruled and defendant was sentenced to be executed on February 14, 1936. His execution was stayed when this writ of error was sued out seeking reversal of the judgment of conviction.

The killing of Dent happened in Chicago about midway of the block between Nineteenth street and Ogden avenue, in front of 1918 South Lawndale avenue, on the west side of the street. At about 7:50 P. M., October 8, 1935, he was shot and killed on the sidewalk there, dying almost instantly. Dent was then thirty-four years of age and lived with his father and mother at 1859 South Lawndale avenue, which was just north of West Nineteenth street. He had dined with his father and mother and left the house

at approximately 7:30 P. M., on October 8. Defendant, Rappaport, had been previously indicted in the United States District Court for unlawfully selling narcotics to Max Dent, the deceased, a crime alleged to have happened on February 4, 1935, in Chicago. Dent was the principal witness against defendant in the Federal court case, and that fact was alleged by the People to be the motive for the killing of Dent.

Joe Dent, father of the deceased, as a witness for the People, testified briefly to the fact that the deceased had dined at home, was alive and well at the time on the night of October 8, 1935, and that he later identified his body lying dead in the county morgue.

The People offered two exhibits: No. 1, a plat showing the vicinity of the homicide, and No. 2, a certified copy of an indictment in the District Court of the United States of America, Northern District of Illinois, Eastern Division, February term, 1935, consisting of two counts. The first count charged that "Joseph Rappaport, hereinafter called defendant, late of the city of Chicago, in the division and district aforesaid, on, to-wit, February 4, 1935, at Chicago, aforesaid, in said division and district, knowingly, willfully, unlawfully and feloniously did sell to one Max Dent, for a large sum of money, to-wit, the sum of $20, a large quantity of a certain derivative of opium, to-wit, 62 grains heroin hydrochloride, not in pursuance of a written order from said Max Dent on a form issued in blank for that purpose by the commissioner of internal revenue; against the peace and dignity of the United States, and contrary to the form of the statute of the same in such case made and provided." This was read in evidence and sent with the jury during their deliberation. It was conceded that defendant, Joseph Rappaport, was the person named therein, and that the defendant, Rappaport, was arrested on February 4, 1935, by the Federal agents, and that the deceased, Max Dent, was present at the time of defendant's arrest.

Annie Dent, mother of the deceased, testified for the People in chief, that the deceased left home about 7:30 P. M., on the night of the homicide; that she followed him; that when she came out of the house, on the east side of Lawndale avenue, north of Nineteenth street, she walked south. She testified she saw her son coming toward her when he was under the elevated structure, which is south of Ogden avenue. She said she walked slowly and saw her son coming; that all of a sudden she saw Joe Rappaport upon the same side of the street; that as soon as she passed the alley there he began to run; that her son wanted to come home from the drug store; that she walked toward her son, going south, and he was walking north, both on the east side of Lawndale; that she saw Joe Rappaport in the light and he began to chase Max; that Max went across Lawndale and she ran across, too, in the same direction; that she was about five or six feet from him; that then another man came against him and stopped him. When that occurred she said Rappaport began to shoot. She testified, "I heard five—four shots. He shot at the boy, who covered his face with both hands; he fell down to the sidewalk; Rappaport come right on, the head on him, took a couple of seconds and fired the fifth shot while my son was lying on the sidewalk, and they both run away in the passageway, which was about where the boy was lying." She then identified Joseph Rappaport, and stated she had known him since 1928. She testified, over the objection of defendant, that Rappaport came to her house in 1934 about a half dozen times; that he brought something with him which she received, a little package in a little silk envelope, to give to Max, and that she gave him three dollars for it. She further testified, over objection, that three different times she received packages from Rappaport to give to her son and gave Rappaport money for them; that she had once opened up one of the envelopes and found it to contain six little capsules containing white powder, and that Rappaport

told her she should give that to Max, which she did. She related that Rappaport once stayed at her home for two days; that on October 8, 1935, her son left the house about 7:30 to get her some medicine, because she was ill; that she went out about five minutes after he left, to see that no harm came to him; that she did not know he had been working for the government agents or that he was in the business of "turning people in" for the government agents and getting pay for it, but she feared he was going to have trouble with Joe Rappaport, and that was in her mind when she left her home that evening to follow him.

Clarence Stachowiak, thirteen years of age, testified that around 8:00 o'clock on the night of October 8, 1935, he was sitting at the southeast corner of Nineteenth street and Lawndale and saw Mrs. Dent on the east side of the same street, going south toward Ogden avenue; that about two minutes after she passed him he heard several bangs; that he could not tell what direction they came from, but after sitting there a while he saw a group of people, went over there and saw a man lying on the sidewalk about three or four minutes after he had heard the bangs; that he learned later the man on the walk was Max Dent, and identified Mrs. Dent as the woman who had passed him a minute and a half or two minutes before he heard the noise.

William Fenn, a police officer assigned to the Lawndale station, testified that about 8:00 o'clock on the night of October 8, 1935, they were notified at the station that there had been a shooting at 1918 South Lawndale; that he immediately went there and found the deceased lying on the sidewalk in front of 1918 South Lawndale; that "while at the scene I saw Mrs. Dent. She came from the north and got to the point where the body was, and she said 'that is my son' and lifted the rubber covering." On cross-examination this witness testified that Mrs. Dent made a statement to him that night at her home, telling him "she saw the shooting, she ran over toward it, and that

someone said to her it was not her son, and she said something of the sort like that she came home and asked her husband if the son was there." He remembered also that she said she ran and asked the father if Max was home, and that the father said he was not there, and then she ran back to the scene and looked at the body and identified it as her son. He also admitted testifying at the coroner's inquest to another story,—that is, "to the first story she gave me immediately after the incident."

It was stipulated that the coroner's physician of Cook county would testify, if called as a witness, that on October 9, 1935, he performed a post-mortem examination on the body of Max Dent; that there was a bullet wound through the cheek on the right side, at the angle of the jaw, through the neck; that there was a bullet wound through the abdomen, and that in his opinion the death of Max Dent was the result of the bullet wound in the neck and bullet wound in the body.

Other evidence was introduced by the People for the purpose of showing a motive on the part of Rappaport to slay Dent, the informer and witness against him. This evidence consisted of the testimony of three Federal anti-narcotic agents, who detailed, over objections, their use of Dent to secure the proof which resulted in the indictment of Rappaport in the United States District Court.

In behalf of defendant it is admitted that the indictment against him in the Federal court was properly introduced in evidence for the purpose of showing motive and intent, but it is insisted that the trial court erred in permitting detailed evidence of all the circumstances leading up to the arrest of Rappaport to be shown. The case of People v. Borella, 362 Ill. 218, is cited in support of this contention, but there the proof was that defendants knew the property was stolen and they had been associated with the thieves in other crimes, so the facts are not comparable to the case at bar. A case more nearly in point, from which defendant

can derive no satisfaction, is *People* v. *Spaulding,* 309 Ill. 292. There Spaulding was on trial for the murder of a constable, and this court laid down the rule that if the evidence offered in a criminal case is relevant and tends to prove a material fact pertaining to the issue it is not rendered inadmissible because it tends to show the defendant was guilty of another offense. Numerous other cases hold that evidence of other offenses may be shown in order to show motive. (*People* v. *Scheck,* 356 Ill. 60; *People* v. *Durkin,* 330 id. 394; *People* v. *Billberg,* 314 id. 182; *People* v. *Fricker,* 320 id. 504.) In *People* v. *Durkin, supra,* we said: "The rule is that any matter material and competent to prove the issues may be shown. The prohibition is not against evidence of other crimes, but such evidence is not admissible where it does not tend to prove the crime charged. That evidence tends to prove an offense other than the one for which the defendant is being tried is never a valid objection to its admissibility. Proof of other crimes cannot be shown to prove a habit or predisposition of the accused on the ground that such proof would show a probability of the guilt of the defendant of the crime charged. (*People* v. *Rogers,* 324 Ill. 224; *People* v. *Kohn,* 290 id. 410; *Williams* v. *People,* 166 id. 132.) The test of the admissibility of evidence always is the connection of the facts proved with the crime charged and whether it tends to show the defendant guilty of that crime. If so, it is competent evidence although it tends to show him guilty of other offenses. (*People* v. *Swift,* 319 Ill. 359; *People* v. *Spaulding,* 309 id. 292; *People* v. *Watkins,* 309 id. 318; *People* v. *Horn,* 309 id. 23; *People* v. *Hall,* 308 id. 198; *People* v. *Mandrell,* 306 id. 413; *People* v. *Estes,* 303 id. 602; *People* v. *Cione,* 293 id. 321; *People* v. *Johnson,* 286 id. 108; *People* v. *Duncan,* 261 id. 339; *People* v. *Jennings,* 252 id. 534; *Farris* v. *People,* 129 id. 521; 1 Wigmore on Evidence, (2d ed.) secs. 216-305.) The guilt of a defendant charged with crime cannot be shown by

showing that he has committed other offenses, but where the motive for the crime charged is the concealment of some other crime, as killing an officer who is attempting to arrest the offender, the evidence of such previous crime is admissible to show motive."

Defendant further argued that because this case was not one wholly of circumstantial evidence, motive could not be shown. Motive, in a murder case, may be shown whether the evidence is direct or circumstantial. (*People* v. *Watkins, supra.*) The court there said: "That evidence offered proves or tends to prove an offense other than the one with which the defendant is charged is never a valid objection to its admissibility. When such evidence is offered, the same considerations with respect to its admissibility arise as upon the offer of any other evidence. The question is, Is the evidence relevant? Does it tend to prove any fact material to the issue involved? (*People* v. *Jennings,* 252 Ill. 534; *Farris* v. *People,* 129 id. 521.) * * * Guilt cannot be shown by showing that the defendant has committed other offenses, but when relevant evidence is offered it is admissible notwithstanding it may disclose another indictable offense. (*People* v. *Cione,* 293 Ill. 321.) Where the motive for the crime charged is the concealment of some other crime, either by destroying the evidence of such other crime or by killing a witness who could testify relative to it or by bribing or killing an officer who is attempting to arrest the offender, the evidence of such motive is admissible even if it does show the commission of an extraneous crime.—(*People* v. *Spaulding, supra; Moore* v. *United States,* 150 U. S. 57, 14 Sup. Ct. 26; *People* v. *Harris,* 136 N. Y. 423, 33 N. E. 65; *Dunn* v. *State,* 2 Ark. 229; Annotations, 62 L. R. A. 212, 105 A. S. R. 990, 7 Ann. Cas. 67."

Error has also been attributed to the trial court in permitting Schufeldt to testify that Martha Rappaport, a sister of defendant, induced him to commit perjury, since there

was no showing connecting defendant with the inducing. The record shows that Schufeldt had taken the stand and testified positively that he was present at the time of the shooting and that Mrs. Dent was not present. In his original testimony Schufeldt said he saw no one else around the place. He told about going into the theatre and starting for home when he heard several shots; that he turned and saw a man fleeing from the scene and there was a body lying on the sidewalk; that the man fleeing was a short, fat man, wore a dark sweater, dark trousers and a cap. He said it was not Joseph Rappaport; that he was not the same build as Rappaport, and Rappaport was not there at that time. On cross-examination the witness re-affirmed his story, saying he was an eye-witness to the murder but did not think it necessary to talk to the State's attorney's office or police; further, that he did not talk to Rappaport but talked to his sister. In rebuttal, however, Schufeldt said he did not see the shooting, he did not know whether he was in the vicinity of the shooting around 8:00 o'clock or not; that what he testified to when he took the stand in the morning was not true. He then said that Rappaport's sister asked him to testify, and that he did so to help out the family. The testimony to which defendant now objects was not objected to at the trial, and as there was no objection then there is nothing now presented to this court for review. After this episode, although defendant now claims he wanted the trial stopped, the attorney then representing him did not ask the withdrawal of a juror, as appears from the certificate of the trial court.

Present counsel for defendant did not represent him at his trial, but claims his case was prejudiced by the admission of incompetent evidence. No cases on this point which bear any close analogy to the present one are cited. Moreover, no claim is made that defendant was improperly or poorly represented at the trial. The point made by counsel for defendant on entrapment is likewise without merit,

and the citation from *In re Horwitz,* 360 Ill. 313, is not applicable here, as is shown by its definition in that case.

In support of defendant's motion for a new trial two affidavits were filed to indicate that the People had two other material witnesses to the crime whom they held in custody and failed to produce, and that their testimony, if introduced, "would probably have shattered the testimony of Annie Dent," the mother of deceased. There is no showing that their testimony was new testimony or newly discovered evidence or that with due diligence it could not have been discovered before the trial. The name of one of these witnesses was on the indictment, and this witness, in any event, could have been interviewed and his testimony used, if desired. Moreover, the affidavits of these two do not indicate that they saw the shooting—they say only they were in the neighborhood and afterwards came up to the dead man and told Mrs. Dent, who, they say, arrived at the scene afterwards, that the victim was not her son. Under these and all the other prevailing circumstances, we do not feel that the trial judge abused the broad discretion necessarily vested in him when he denied the motion for a new trial. *People* v. *Mindeman,* 318 Ill. 157; *People* v. *Buzan,* 351 id. 610.

Counsel for defendant assert that he was prejudiced by attempts of the assistant State's attorney to convey the impression to the jury that deceased was in the Hines Hospital or a member of the American Legion. The record fails to show any proof that Dent belonged to the American Legion, and there appears only one remark by the mother, not in response to any question, that he had been in Hines Hospital. Other objections to prejudicial conduct and inflammatory argument of the assistant State's attorney to the jury are equally without foundation in the record. The evidence fairly tended to show that defendant sold narcotics to Max Dent, and then, after being indicted, shot and killed him. After evidence of this character had

been admitted, the assistant State's attorney had a right to comment upon it in his argument. A large part of the argument now complained of was not objected to when the argument was made. Without unduly lengthening this opinion, and after scrutinizing the entire record, we are of the opinion that the remarks in question were all fairly based upon the evidence and legitimate inferences therefrom, and that none was of that extreme, baseless or inflammatory character such as would seriously prejudice the defendant.

The defense of Rappaport was that he was not at the scene of the crime and therefore could not have committed it—that he was in certain other places where no one saw him. His own testimony was largely discredited. He said he attended a certain theatre that night where he saw the pictures of the Louis-Baer prize-fight, but the proof showed that no such pictures were shown that night, and he later admitted that he never saw them. His story of being in a restaurant that night from 9:45 to 11:00 o'clock was not corroborated, but the restaurant keeper and a police officer who was there looking for him both failed to see him.

A review of the evidence convinces us that the jury was fully justified in finding, beyond a reasonable doubt, that defendant was guilty, and that he was given a fair and impartial trial.

The judgment of the criminal court is therefore affirmed, and the clerk of this court is directed to enter an order fixing October 23, 1936, as the date on which the original sentence entered in the criminal court of Cook county shall be executed. A certified copy of this order shall be furnished by the clerk of this court to the sheriff of Cook county.

*Judgment affirmed.*