THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEROY HAIRSTON, Defendant-Appellant.

(No. 57360; )

First District (5th Division)—February 9, 1973.

*Rehearing denied March 29, 1973.*

Marshall Patner, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Stephen J. Connolly, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

*OFFENSE CHARGED*

Murder (two counts). Ill. Rev. Stat. 1967, ch. 38, par. 9—1 and par. 9—1 (a—2).

*JUDGMENT*

After a jury trial, defendant was found guilty and sentenced to a term of not less than 75 nor more than 150 years.

*CONTENTIONS RAISED ON APPEAL*

1. Defendant was denied his right to a speedy trial.
2. The Illinois alibi statute is unconstitutional.
3. Defendant was wrongfully denied a change of venue.
4. Defendant was deprived of his right to a fair trial in that:
 (a) evidence of gang membership was wrongfully admitted;
 (b) evidence of a relevant nature was wrongfully restricted in two specific instances;
 (c) evidence of an emotionally inflammatory nature was wrongfully admitted.
5. Defendant's constitutional right against self-incrimination was violated.
6. The trial court's supplemental charge to the jury was prejudicial to defendant.
7. Defendant was not proved guilty beyond a reasonable doubt.

*EVIDENCE*

For a detailed recital of the evidence in this trial, we refer to our opinion in *People v. Ephraim,* 133 Ill.App.2d 310, 273 N.E.2d 225. As to this defendant, however, we make particular note here that he was unequivocally identified by three eyewitnesses whose testimony in that

regard was unshaken on cross-examination. Two saw him point a gun out the right front window of a passing car and fire it five or six times, killing the deceased and wounding another youth, both of whom were standing with the witnesses on the sidewalk. After the shooting, the three witnesses gave chase in their own car with its bright lights on. In the course of turning corners to the right, all three positively identified defendant as sitting in the right front seat of the get-away car which they were unable to catch. One of the identifying witnesses had known defendant for five years and had talked to him the day before in negotiations looking toward a peace treaty between the Falcons (to which the witness belonged), and the Blackstone Rangers (to which defendant belonged). Another of the eyewitnesses had known defendant for five or six years and had seen him over 1000 times.

*OPINION*

Defendant and his co-defendant, William Ephraim, were tried together and were both convicted of murder. Ephraim's conviction has since been reversed because of weakness in the evidence relating to his identification. (*People v. Ephraim*, 133 Ill.App.2d 310, 273 N.E.2d 225.) Defendant filed this appeal in the Supreme Court which transferred the case to us.

Initially, defendant contends that he was denied his right to a speedy trial pursuant to section 103—5(a) of the Illinois Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 103—5(a)), in that the State failed to bring him to trial within 120 days from the time he filed his written demand for trial. That section provides:

> "Every person in custody in this State for an alleged offense shall
> be tried by the court having jurisdiction within 120 days from the
> date he was taken into custody unless delay is occasioned by the
> defendant, * * *."

Defendant, in custody continuously after his arrest, made his demand for trial on April 21, 1969. The case was continued to May 19, 1969, and then to June 9, 1969, both times on the State's motion. On June 9, 1969, defendant made a written motion for a change of venue alleging that he could not receive a fair trial in Cook County due to prejudicial publicity in the area to which the public had been exposed by newspapers, television, and radio. In support of this motion, defendant filed an exhibit of numerous newspaper articles to demonstrate the alleged prejudice of which he complained.

Defendant urged that the motion be decided that same day, and that, if denied, the trial should commence the next day. However, the trial court took the motion under advisement and continued the case until June 20, 1969, at which time the motion was denied. The date of denial was eight days from the expiration of the 120-day period commencing

with defendant's demand for trial. The court then continued the case on the State's motion to July 14, 1969.

■■ On July 11, 1969, defendant made a motion for discharge for lack of speedy trial. The court, in denying the motion, ruled that the 120-day period had started over as a consequence of defendant's motion for change of venue, holding that the motion had caused delay of the trial even though, after it had been taken under advisement for thorough consideration by the court, the motion had been denied.

Defendant cites two cases which hold that a defendant's right to be tried within the four-month period is not to be denied if he asks for and receives a change of venue. (*People v. Iasello,* 410 Ill. 252, 102 N.E.2d 138; *People v. Rankins,* 18 Ill.2d 260, 163 N.E.2d 814.) Defendant urges that since his motion was unsuccessful, he should not be considered as having caused any delay in the court proceedings. We see no reason to make such a distinction. Defendant's position that his unsuccessful motion caused no delay *might* be tenable if his motion had been one which could have been acted upon immediately and which, in actual fact, would have caused no further delay. (See *People v. Markword,* 108 Ill. App.2d 468, 472-473, 247 N.E.2d 914, 917.) However, the particularly lengthy motion filed in this case, being 90 pages in length, required a postponement of the trial to allow a conscientious trial judge time to give it proper and judicious consideration. This necessary delay for the trial court's deliberations, then, was for the benefit of defendant, and was properly attributed to him.

■■ Defendant next argues that the Illinois alibi statute (Ill. Rev. Stat. 1967, ch. 38, par. 114—14), unconstitutionally deprived him of his right to due process in that it required him to disclose his alibi in advance of trial, while section 114—9 of the Illinois Criminal Code of Procedure (Ill. Rev. Stat. 1967, ch. 38, par. 114—9), does not compel the State to disclose the identity of its rebuttal witnesses.

Our Supreme Court has already ruled on this issue, holding that the discovery of alibi-rebuttal witnesses would further implement the concept of a trial as a search for the truth, but that the matter was one properly to be considered by the General Assembly and not by the courts. Further, the court held that the discoverability of alibi-rebuttal witnesses was not an essential element of due process where defendant is otherwise afforded substantial discovery of prosecution witnesses, as in the case in this State. (*People v. Holiday,* 47 Ill.2d 300, 303-304, 265 N.E.2d 634, 635-636.) We are, of course, controlled by this holding and find that defendant was not denied due process of law by the application of the alibi-notice statute.

In May, 1969, after defendant had been in custody for 20 weeks, but

before defendant's trial, a number of anti-youth-gang articles appeared in the Chicago newspapers. These articles accused youth gangs of numerous acts of violence and suggested that the gang members were committed to slaughtering those who opposed them. The articles also made references to the campaign of the police and the State's Attorney to "smash" such gangs. Many of the articles referred to the Blackstone Rangers as "the largest and best financed of the city's street gangs."

On June 9, 1969, before his trial began, defendant filed a motion (accompanied by these newspaper articles) for change of venue to another county, stating to the trial court that the deceased and certain witnesses for both the State and the defense were members of those rival street gangs which had been the target of recent adverse publicity. Defendant argued that, although he was not named personally in the articles, he would suffer from the prejudice of being associated with a gang accused of massive killing and violence. This motion was denied.

Again, on August 30, 1969, before the jury had been selected, defendant revived his motion for change of venue on the same ground and, in the alternative, moved the court to exclude all evidence of gangs and gang membership. This motion, too, was denied.

Defendant contends that the denial of his change of venue motions was erroneous and prejudicial in that section 114—6(a) of the Illinois Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 114—6(a)) provides:

> "A defendant may move the court for a change of place of trial on the ground that there exists in the county in which the charge is pending such *prejudice against him* on the part of the inhabitants that he cannot receive a fair trial in such county." (Emphasis added.)

The fact that there is potentially harmful publicity within a community does not establish proof of community prejudice, as each case must be judged on its own facts. (*People v. Gendron*, 41 Ill.2d 351, 354-355, 243 N.E.2d 208, 211, *cert.* den. 396 U.S. 889.) In *People v. Berry*, 37 Ill.2d 329, 226 N.E.2d 591, where the articles of which defendant complained had set out the details of the crime and arrest and had stated that defendant was a former convict, a habitual criminal, and a menace to society, the Illinois Supreme Court still held that there was no prejudice to defendant. In the instant case, the facts are much weaker than in the *Berry* case as none of the news articles in the current case referred to defendant by name, and none referred to the facts involved in the offense for which defendant was charged. We therefore find that here, too, there was no prejudice to defendant requiring reversal.

Defendant next contends that he was denied a fair trial in three spe-

cific instances. He first complains that evidence of gang membership was wrongfully admitted because no competent evidence was produced to establish his affiliation with a street gang, and because no evidence was introduced to connect gang activity with the commission of the crime.

■■ Direct examination of the State's occurrence witnesses established that the boys standing on the corner of 65th and University, the deceased included, were members of the Falcons, a division of the East Side Disciples. Although James Shead did not know what position, if any, defendant held within the gang, he testified that defendant was a member of the Blackstone Rangers. The further testimony of Shead disclosed that he had met with defendant the evening before the incident and had negotiated with him about a peace treaty between the East Side Disciples and the Blackstone Rangers; and that there had been "bad blood" between the rival gangs before this treaty had come about.

Such evidence, being sufficient to establish deceased as a member of the Falcons and defendant as a member of the Rangers, also established a relationship between the rival gang activity and the crime involved. In our opinion, it was therefore relevant to the issues before the court at trial and was properly admitted.

Defendant then complains that evidence of a relevant nature was wrongfully excluded in two specific instances. First, when defendant was not allowed to introduce certain evidence concerning fingerprints, and then when defendant was not permitted to question Detective Beirne concerning a "reluctant witness" whose identity was allegedly concealed from defendant.

■■ An abandoned car which matched the general description of the car involved in the shooting (a red 1964 Chevrolet) was found in the vicinity of the crime and was dusted for fingerprints. Defendant contends that he was wrongfully denied the opportunity to introduce evidence that the prints found did not match his. The test of admissibility of evidence is whether there is a connection between the facts proved and the crime charged. (*People v. Rappaport*, 364 Ill. 238, 244, 4 N.E.2d 106, 109, *cert.* den. 300 U.S. 656.) Here, there was absolutely no evidence that the abandoned car found in the vicinity of the shooting was the same one involved in the crime. The ruling of the trial judge to exclude this evidence, then, was proper since the fact that defendant's fingerprints were not found in the abandoned car proves nothing with respect to his guilt or innocence in this case.

■■ There is also no merit to defendant's contention, made in his post-trial motion, that he was denied a fair trial because the State withheld from him the identity of an additional witness whom defense counsel

claimed to have seen referred to on a police report of Detective Beirne as a "reluctant witness." The trial court would not permit him to question Detective Beirne concerning this unknown witness after Beirne had testified on cross-examination that he had taken statements from two witnesses only (Shead and Evans), and that he had not interviewed any other witnesses. The record shows that on pre-trial discovery the State had furnished defendant with what purported to be a complete list of its witnesses. At the post-trial hearing the State's Attorney advised the court that he had never learned of any other witness, and had he done so, he would have produced the witness even if his testimony might have proved unfavorable to the State's case. It was therefore proper for the trial court to have prohibited any further questioning of the police officer at the trial concerning any other person referred to only by defense counsel as a "reluctant witness."

Defendant also complains of an unfair trial due to the prejudicial testimony of the mother of the deceased. Defendant argues that he was willing to stipulate to the deceased's identity and to the fact of his death, but that, over his objection, the trial judge allowed these uncontroverted facts to be presented to the jury by the deceased's mother. During her testimony, she broke down and wept, and the trial court did not, as defendant requested, caution the jury against being influenced by her weeping.

■■■ In a murder trial, the State must prove that a death occurred, and although defendant can offer to stipulate to such fact, the State, during a trial on a plea of not guilty, need not enter into such a stipulation, but may, if it chooses, produce its evidence in that regard. (*People v. Speck*, 41 Ill.2d 177, 201, 242 N.E.2d 208, 221, reversed on other grounds 403 U.S. 946, 91 S.Ct. 2279.) The weeping of the deceased's mother, a natural reaction to her testimony concerning her son, did not result in reversible prejudice to defendant.

Defendant next asserts that his right against self-incrimination was violated when the State's Attorney made comments to the jury during his closing argument which reflected on defendant's failure to testify and on his failure to present an alibi.

■■■ As to the comment on defendant's failure to testify, the prosecutor said only that, "[You, the jury] never really had a chance to watch any defense witnesses with the exception of Mrs. Ephraim." Such a statement is not prejudicial to defendant as it is permissible for the State to comment on the uncontradicted nature of its evidence, "even where the only person who could have contradicted State's evidence was the defendant himself." (*People v. Mills*, 40 Ill.2d 4, 8, 237 N.E.2d 697, 700; *People v. Norman*, 28 Ill.2d 77, 81, 190 N.E.2d 819, 821.) We note also

that defendant's objection to this comment was sustained, and the jury was promptly instructed to disregard it.

■■ Further in the course of his argument to the jury, the State's Attorney commented on the fact that the only evidence as to where defendant was at the time of the crime was the testimony of the State's witnesses. Defense counsel characterizes this comment as a reference to defendant's failure to present an alibi, and claims that prejudice resulted therefrom. No objections were made at the time of the comments, however, and therefore the prejudice, if any, was waived. *People v. Linus,* 48 Ill.2d 349, 355, 270 N.E.2d 12, 15.

■■ Defendant then argues that the trial judge erred when he gave the jury a so-called "dynamite" charge. Several hours after the jury had first retired, it returned to the courtroom, and the foreman reported that the jury could not reach a verdict with respect to one of the two defendants, without naming the defendant whose verdict was settled. Upon receiving this report, the trial judge additionally charged the jury as follows:

> "All right. Let me say this to you. If you should fail to agree on a verdict the case must be retried. Any future jury must be selected in the same manner and from the same source as you have been chosen. There's no reason to believe that the case would ever be submitted to 12 men or women more competent to decide it or the case could be tried any more better or exhaustively than it has here or any more clearer evidence could be produced on behalf of either side. I'd like you to retire and consider a verdict. Take as much time as you like."

Defendant argues that this charge improperly affected independent jury deliberation since, inherently, the jury has the freedom to be "hung."

The usual criticism of an *"Allen"* charge (*Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154), centers on language which urges those in the minority on the jury to re-evaluate their positions, giving consideration to the fact that the majority of the jury heard the same evidence, yet took a different position. It is to be noted that the instruction given in his case does not contain such language, and therefore the charge was not improper in that respect. In the recent case of *People v. Prim,* 53 Ill. 2d 62, the Illinois Supreme Court was confronted with an instruction containing language almost identical to that in the case now before us, and the same issue of prejudice was raised. While the court did not find the instruction entirely proper, it did conclude that its giving had not caused prejudice to the defendant.

Defendant's last assertion is that he was not proved guilty beyond a reasonable doubt. Defendant stresses that because "contrary and con-

flicting" testimony was insufficient to support a conviction against his co-defendant (see *People v. Ephraim,* 133 Ill.App.2d 310, 273 N.E.2d 225), then the same testimony must have been insufficient to convict him. ■ This contention is neither logically nor legally correct. The weak identification of Ephraim and the subsequent reversal of his conviction have no bearing on the issue of whether this defendant was adequately identified. The State produced three witnesses who knew defendant prior to the incident and who positively identified him at the scene of the shooting and during the subsequent chase. The verdict is more than adequately supported by the evidence.

The judgment of the circuit court is affirmed.

Affirmed.

DRUCKER, P. J., and LORENZ, J., concur.