UNITED STATES of America ex rel. LeRoy HAIRSTON, Petitioner,

v.

WARDEN, ILLINOIS STATE PENITENTIARY, STATEVILLE CORRECTIONAL CENTER, Respondent.

No. 75C1079.

United States District Court, N. D. Illinois, E. D.

Feb. 9, 1976.

Kenneth N. Flaxman, Chicago, Ill., for petitioner.

William J. Scott, Atty. Gen. of Ill., Springfield, Ill., Stuart W. Opdycke, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM OF DECISION AND ORDER

LYNCH, District Judge.

This is a petition for a writ of habeas corpus brought by a prisoner in state custody pursuant to the provisions of 28 U.S.C. Section 2254. Jurisdiction in this Court is based on 28 U.S.C. Section 2241. Petitioner is presently incarcerated in the custody of respondent Warden of the Illinois State Penitentiary, Stateville Correctional Center. The case is presently before the Court on respondent's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Petitioner has filed a cross motion for summary judgment. The material facts are not in dispute, and each party claims he is entitled to judgment as a matter of law.

On September 8, 1968, one Booker Ransom was shot and killed by gun shots fired from a passing car around 65th and University Avenue, in Chicago, Illinois. Petitioner and a co-defendant William Ephraim [1] were indicted for that murder.

From the time of his arrest and throughout both the trial and state appeals, petitioner was represented by Marshall Patner, an attorney of the Illinois bar. Attorney Patner has filed an affidavit in support of petitioner's motion for summary judgment. The affidavit reveals the following: Prior to trial Patner spoke with petitioner about the murder charge. Petitioner advised Patner that at the time of the incident in question he was in the presence of witnesses who would verify the fact that petitioner was at a location other than that where the murder occurred. Having been informed of these witnesses' names, Patner verified the existence of these witnesses, and the fact that they verified petitioner's alibi.

Prior to trial, the prosecution requested petitioner to disclose a notice of in-

---

1. Ephraim's murder conviction was subsequently reversed by the Appellate Court of Illinois on grounds of insufficient evidence, *People v. Ephraim*, 133 Ill.App.2d 310, 273 N.E.2d 225 (1972). Issues pertaining to Ephraim are not material to the considerations in this case.

tent to put on an alibi defense.[2] Patner filed a motion to quash the prosecution's request for disclosure of an alibi defense on the grounds that it was a denial of due process to require a defendant to disclose evidence to the state without a reciprocal disclosure on the part of the State. Patner sought a ruling from the trial judge which would either grant the defendant's prior motion for discovery of grand jury minutes, police reports, and statements of witnesses, or declare the alibi disclosure statute to be unconstitutional. The trial court denied both of these motions.

The affidavit further states that Patner believed that any attempt to offer an alibi defense without compliance with the alibi disclosure statute would be fruitless. Patner discussed this with the petitioner, and so advised him as to the problems of presenting a notice of intent to advance an alibi defense without reciprocal disclosure. Patner states:

> "Entering into this discussion was my belief that the only substantial testimony which would be introduced against Mr. Hairston would come from members of a youth gang who shared an animosity towards Mr. Hairston, and that their eyewitness testimony would be afforded little credibility by the jury. In view of the gang rivalry considerations, I did not consider it unlikely that alibi rebuttal witnesses could be obtained from the pool of persons who disliked petitioner. In other words, I believed that it would be a close case, and that Mr. Hairston

would be prejudiced if we advanced his alibi defense without disclosure of alibi rebuttal witnesses."

Patner and the petitioner then decided that the case would be defended on the theory that the prosecution would not be able to prove petitioner's guilt beyond a reasonable doubt.

The affidavit concludes with a statement by Patner that once the decision had been made to employ a defense of insufficient evidence, and once the trial had begun, it would have been a futile exercise of ineffective trial tactics to try to assert an alibi defense at the close of the prosecution's case. It was the affiant's opinion that a theory of the case must be decided prior to trial, and that if the defense will be alibi, then this must be explored on voir dire examination of the jurors, in defense's opening statement, and through cross examination of prosecution witnesses.

The jury returned a verdict of guilty of murder and petitioner was sentenced from 70 to 150 years in the penitentiary. This conviction was affirmed by the Appellate Court of Illinois, *People v. Hairston,* 10 Ill.App.3d 678, 294 N.E.2d 748 (1973), which rejected petitioner's claim that the Illinois notice of alibi defense statute was unconstitutional. That court relied on *People v. Holiday,* 47 Ill.2d 300, 265 N.E.2d 634 (1970), in rejecting petitioner's challenge. Petitioner then sought review in the Illinois Supreme Court, and during the pendency of his petition for leave to appeal to that court, the United States Supreme Court decid-

---

**2.** The Illinois notice of alibi defense statute, Ill.Rev.Stat. Ch. 38, Section 114–14, provided in part: Upon the request of the prosecuting attorney, filed and served upon a defendant not less than 10 days before the trial of such cause, whenever a defendant charged with an offense prohibited by Articles 8 through 33, inclusive, of the "Criminal Code of 1961" proposes to offer in his defense, testimony to establish an alibi, such defendant shall, not less than 5 days before the trial of such cause, file and serve upon the prosecuting attorney a notice in writing of his intention to assert such alibi, which notice shall include specific information as to the place where the accused maintains he was at the time of the alleged

offense and the names and addresses of the witnesses whom the defendant intends to call to establish such alibi defense. The defendant shall not be permitted to introduce evidence inconsistent with such notice unless the defendant establishes to the satisfaction of the court that witnesses to be called and not named in the notice were not known at the time such notice was filed or the court for other good cause permits the notice to be amended. In the event of the failure of a defendant to file written notice as required in this Section, the court may exclude evidence offered by the defendant for the purpose of proving an alibi, if it appears to the court that such evidence takes the State by surprise.

ed *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). In *Wardius,* the Court declared the Oregon notice of alibi defense statute unconstitutional on due process grounds for its failure to provide for reciprocal discovery to the accused of the prosecution's alibi rebuttal witnesses, 412 U.S. at 476, 93 S.Ct. 2208.

In September, 1973, the Illinois Supreme Court declined to apply *Wardius* to petitioner and denied review of his case. That court subsequently held the Illinois notice of alibi defense statute to be unconstitutional, "in the light of what the Supreme Court said in *Wardius,*" *People v. Fields,* 59 Ill.2d 516, 322 N.E.2d 33, 35 (1974).

■ In accordance with *Wardius,* this Court agrees with the Illinois Supreme Court that the Illinois notice of alibi defense statute, Ill.Rev.Stat., Ch. 38, Section 114–14, is unconstitutional.

The sole issue presented by this petition for a writ of habeas corpus is whether the decision of the United States Supreme Court in *Wardius* is to be applied retrospectively to petitioner's case.

In dealing with the question of retroactivity of newly promulgated Constitutional rules in the area of criminal procedure, the United States Supreme Court has established carefully delineated and explicit guidelines. An analysis of those principles follows:

In *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Court was confronted with the question of whether the decision in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), should be applied retrospectively. After an historical exposition of theories of retroactivity, the Court said:

" . . . we believe that the Constitution neither prohibits nor requires retrospective effect. As Justice Cardoza said, 'We think the federal constitution has no voice upon the subject.' " 381 U.S. at 629, 85 S.Ct. at 1737.

The Court then proceeded to look at the purpose of the *Mapp* rule, the re-

liance placed on doctrine of *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) which *Mapp v. Ohio, supra,* overruled, and the effect upon the administration of justice of a retrospective application of *Mapp.*

After finding that the exclusionary rule of *Mapp* was not to be applied retrospectively, the Court indicated:

" . . . In each of the three areas in which we have applied our rule retrospectively the principle that we applied went to the fairness of the trial—the very integrity of the fact-finding process." 381 U.S. at 639, 85 S.Ct. at 1743.

The three areas referred to in this quotation are *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), which held that the State must furnish transcripts of the trial to indigent defendants on appeal; *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which held that counsel must be appointed for indigents charged with felonies; and *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), which required a hearing to determine the voluntariness of a confession. In each of these cases, the newly promulgated Constitutional principles were made fully retroactive because they went to the integrity of the fact-finding process.

In *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) the Court quoted a passage from *Johnson v. New Jersey,* 384 U.S. 719, 729, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966):

"[T]he retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved."

Preceding this quotation, the Court clearly established the factors to be considered:

"The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Stovall, supra,* 388 U.S. at p. 297, 87 S.Ct. at p. 1970.

Approximately one year later in the case of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the Court held unconstitutional on due process grounds a statute that provided for challenges for cause in murder trials "of any juror who shall, on being examined, state that he has conscientious scruples against capital punishment, or that he is opposed to the same." In considering whether the holding should be given retrospective or prospective only application, the Court found that the jury selection standards in question necessarily undermined the integrity of the fact finding process, and that neither the reliance of law enforcement officials nor the impact of a retroactive holding on the administration of justice warrant a decision against the fully retroactive application of the rule. *Witherspoon, supra,* 391 U.S. at p. 523, n.22, 88 S.Ct. 1770.

In *Williams v. United States,* 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), the Court again reiterated the threefold analysis formulated in *Stovall,* and then held:

"Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs the truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances." *Williams, supra,* 401 U.S. at p. 653. See also *Adams v. Illinois,* 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972).

■ It appears clear from the above cited cases that if the newly promulgated constitutional doctrine relates to the integrity of the fact-finding process, then that doctrine must be applied retrospectively, notwithstanding the other considerations of the good-faith reliance of law enforcement officials upon the prior constitutional doctrine, nor the impact of the new doctrine on the administration of justice. With these guidelines in mind, the Court turns to the issue presented by this petition, namely, whether the decision in *Wardius* is to be applied retrospectively.

In *Wardius* the Supreme Court held that the Oregon notice of alibi defense statute violated a defendant's due process rights since that statute did not provide for reciprocal discovery rights on the part of the defendant. The Court notes that the Illinois notice of alibi defense statute, Ill.Rev.Stat. Ch. 38, Section 114–14, is substantially similar to the Oregon statute in that it also fails to provide the defendant with reciprocal discovery rights as to the State's rebuttal witnesses.

■ It is the opinion of this Court that Illinois notice of alibi statute interfered with the petitioner's ability to secure a fair trial. The statutory requirement of giving notice of an alibi defense without a reciprocal right of discovery relating to the prosecution's rebuttal witnesses placed a constitutionally impermissible obstacle in the path of the fact-finding process at trial. As the Court in *Wardius* found, so this Court finds that reciprocal discovery is required by fundamental fairness and it is insufficient that although the statute does not require it, the State might have granted reciprocal discovery in this case.

The Court concludes that the *Wardius* decision had as its major purpose the

overcoming of "an aspect of the criminal trial that substantially impairs its truth-finding function and so raises questions about the accuracy of guilty verdicts in past trials." *Williams, supra*, 401 U.S. at p. 653, 91 S.Ct. at p. 1152. Hence, the Court finds that the decision in *Wardius* is to be applied retrospectively in this case. Since the Court is of the opinion that the holding of *Wardius* relates to the integrity of the fact-finding process, an inquiry relating to the extent of reliance by law enforcement authorities on the old standards (here, Ill.Rev.Stat. Ch. 38, Section 114–14), and relating to the effect on the administration of justice of a retroactive application of *Wardius* need not be made. See *Williams, supra*.

Accordingly, for the reasons herein stated, this court hereby orders that a writ of habeas corpus shall issue and that the petitioner be enlarged from state custody if he is not afforded a new trial within 120 days.